L. M. CARPENTER, Assignee for the Benefit of the Creditors of E. E. Snyder, Appellee, v. JONES COUNTY, IOWA, and J. F. PETCINA, County Treasurer. Appellants.

Taxation: ACTION TO RESTRAIN COLLECTION. The listing of money for taxation by an insolvent, for the purpose of misleading the public and shielding his credit, cannot be made the basis of an action of fraud by his assignee for the benefit of creditors to restrain the collection of the tax.

Same. An assignee for the benefit of creditors will not be relieved from the payment of taxes on the property coming into his hands, where there is no showing that the same was different from that owned by the assignor at the time of the assessment, or that the value was materially less.

*Appeal from Jones District Court.*— HON. J. H. PRESTON, Judge.

TUESDAY, MAY 8, 1906.

ACTION in equity to enjoin the collection of a tax. Decree for plaintiff, and defendants appeal.— *Reversed.*

*A. G. Bauder,* County Attorney, and *Herrick & Bauder,* for appellants.

*Park Chamberlain* and *Jamison & Smyth,* for appellee.

WEAVER, J.— On January 1, 1904, and for several years prior to that date one E. E. Snyder, under the business name and style of " The Bank of Olin " was engaged in business as a private banker a the town of Olin in Jones county, Iowa. The nominal and advertised capital invested in the bank was $10,000. On the date named Snyder was apparently solvent, and in listing his property for assessment and taxation for the year 1904 listed his taxable moneys and credits at $11,000. As

a matter of fact he was at that time insolvent, his debts and liabilities exceeding in amount the value of his moneys and credits, and in reporting said sum of $11,000, he was actuated by the desire to keep up the appearance of solvency and conceal his real financial condition from the public. Taxes for the year 1904 were duly leved upon said assessment to the amount of about $137, and on December 13, 1904, and while said tax was yet unpaid, Snyder made a deed of assignment to the plaintiff for the benefit of his creditors. An inventory of the insolvent estate disclosed assets not to exceed $150,000 as against an indebtedness to depositors and others of more than $180,000. Upon this state of facts the plaintiff assignee brought this action in equity, alleging that the act of Snyder in returning said sum of moneys and credits for taxation was a fraud upon his creditors, and demanded that the tax levied thereon be declared void, and its collection be permanently enjoined. To this petition the defendants demurred generally and specially. The demurrer was overruled and decree rendered thereon as prayed by the plaintiff, and defendants appeal.

In our judgment this ruling cannot be sustained. We are unable to discover any vestige of actionable fraud in the admitted facts. It is not denied that Snyder had in fact at least $11,000 in moneys and credits. Indeed, it is apparent that he had much more than that sum; and while under our tax laws it was his privilege to have the amount of his *bona fide* indebtedness deducted from the sum of his moneys and credits, it was nevertheless a privilege which he was not bound to exercise. It may be true that the waiver of this right on his part was a sacrifice to appearances and even though the general public may have been deceived thereby it falls far short of a fraud in law. Prompted by the same motive, one man may indulge in a new dress suit, another may invest in diamonds or fine horses or automobiles, and another may contribute beyond his ability to the campaign fund of his party or to the salary of his wife's

pastor, when the money thus expended would be better employed in the payment of his honest debts but whatever may be our estimate of the ethical quality of his conduct in this respect no one will contend that it constitutes a fraud upon his creditors in the legal sense of that term.   Even if it could be said that the assessment here complained of may have operated to strengthen the credit of the insolvent banker and mislead his creditors, it would still fall short of fraud affording relief to the creditors in law or in equity.   But it is not alleged or claimed that any creditor ever knew or heard of the assessment until after the failure of the bank, or that any person was thereby deceived or misled to his injury.   The tax is not in the nature of a debt or claim for which no consideration ever passed.   The payment of taxes by a property owner is a public duty, and when the tax has been duly levied according to the prescribed forms of law, that duty becomes a legal obligation as well, and the property whether in the hands of the owner, or of his assignee for the benefit of creditors, may be subjected to such payment.

As we have already said, the property taxed did, in fact, exist in the hands of Snyder when it was assessed.   No collusion, fraud, or wrong is charged against the taxing officers.   No claim of over valuation was made to the board of review, no appeal was taken therefrom as provided by law, no illegality or irregularity appears anywhere along the line. If, under such circumstances, the creditors of every failing debtor may go into the courts and enjoin the payment of taxes assessed against him under the claim that the taxed property was over valued or that the debtor failed or refused to exercise to the full extent his right to set off his debts and liabilities against his taxable moneys and credits, the collection of public revenues might be seriously embarrassed by vexatious litigation.   The law provides the scheme of taxation and special tribunals and remedies by which irregularities and inequalities therein may be remedied, and it is

only where the tax is void or voidable that a court of equity will interefere to prevent its collection. The remedy for all other wrongs and errors in the assessment or levy must be sought at the hands of the taxing officers or by appeal therefrom in the manner provided by statute. *Crawford v. Polk County,* 112 Iowa, 118.

As we have already suggested the tax is neither illegal nor void. It is not even erroneous, irregular, or informal. Snyder had the property which was taxed and that property charged with the tax has passed into the hands of the assignee. That such tax would have been less, or that no tax would have been levied had Snyder seen fit to disclose his true condition to the assessor and demand the setting off of his liabilities to the full amount of his moneys and credits, is something, which, at this stage of affairs, is wholly immaterial. Had he made no assignment, he would not now be heard to dispute the validity of the tax, and in this respect his assignee occupies no stronger position.

Counsel for assignee cite us to the constitutional provision that all laws of a general nature shall have uniform operation throughout the state, and to decisions holding that our laws should be so construed as to avoid double taxation, and that moneys and credits are assessable in the taxing district where the owner resides. We cheerfully concede the soundness of all these propositions, but confess our inability to find their application to the case in hand. There is no question raised as to Snyder's residence; the tax may have been greater than would have been levied had he claimed all the deductions which he might rightfully have demanded, but it is in no sense " double taxation "; and if there is any statute involved in this proceeding which contravenes the constitutional inhibition against special legislation counsel have not called it to our attention.

Nor does the statute (Code, section 3078) which provides that assignees for the benefit of creditors shall only be liable for taxes levied on the assigned property, afford

plaintiff any relief in this case. It is not alleged that the assigned property in this present case was other or different than that which was owned by the debtor at the time the assessment was made, or that the debtor's personal estate was materially less in quantity or value when assigned than it was when he listed it for taxation. The assignee received the property on which this tax was levied and no sufficient cause is shown why its collection should be enjoined.

2. SAME.

The decree of the district court is therefore *reversed*.