[Nos. 5150, 5151, 5152.]
[Nos. 2745, 2746, 2747 C. A.]

## HALLETT v. THE BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY ET AL. (THREE CASES).

[No. 5220.]
[No. 2834 C. A.]

## THE BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY ET AL. v. HALLETT.

1. **Taxes and Taxation — Collection — Equitable Relief—When Granted.**

Equity will not enjoin the collection of an illegal tax, unless the taxpayer has no adequate remedy at law, or its collection will result in irreparable injury to him, or lead to a multiplicity of suits. The reason for the rule being that a state cannot exist unless taxes are regularly and promptly paid, that the levy of taxes is a legislative and not a judicial function, and that the court can neither make nor cause to be made a new assessment if the one complained of be erroneous.—P. 315.

2. **Same—Injunction—Complaint—Sufficiency.**

In an action to restrain the collection of taxes, where the complaint states no issuable fact to the effect that the plaintiff will suffer irreparable injury in the event the collection of the tax is enforced, and fails to allege sufficient facts to show that the wrongs of which he complains may not be adequately redressed in an action at law, plaintiff fails to state a cause of action entitling him to equitable relief; and especially so when our statutes (Mills' Ann. Stats., § 3777) appear to afford a legal remedy.—P. 318.

3. **Same—Fraudulent Assessments.**

Conceding that the collection of a tax based on a fraudulent assessment may be enjoined without regard to the question of an adequate remedy at law, it must appear from the complaint that the party is or will be injured thereby, before equity will grant relief; and a complaint to the effect that the county commissioners and treasurer claim the right to collect the tax, without alleging that any steps are being taken to enforce the collection, wholly fails to show that any wrong has been, or will be, inflicted which should be redressed.—P. 318.

*Appeal from the District Court of Arapahoe County.*
Hon. F. T. Johnson, and Hon. John I. Mullins,
Judges.

Action by Moses Hallett against the board of county commissioners of Arapahoe county, Willard L. Ames, as assessor, and Mortimer Wheeler, as treasurer, of said county. From a judgment in favor of defendants in three of the actions, plaintiff appeals, and, from a judgment in favor of plaintiff in one of them, defendants appeal.

Decision *en banc.* *Judgments affirmed on plaintiff's appeals, and reversed on defendants' appeal.*

Mr. GEO. W. ALLEN and Mr. W. C. KINGSLEY (Mr. CHAS. W. WATERMAN, of counsel), for plaintiff.

Mr. FRED W. PARKS, Mr. JOHN T. BOTTOM, and Mr. HENRY A. LINDSLEY (Mr. CHAS. R. BROCK, of counsel), for defendants.

Appellant brought four actions in the court below, the purpose of which was to annul assessments against him in the county of Arapahoe and enjoin the collection of taxes thereon, upon personal property scheduled by the assessor as belonging to him, for the years 1897, 1898, 1899 and 1900 respectively. To each of these actions the county assessor, county treasurer and board of county commissioners of Arapahoe county were made defendants. The controlling question presented by each of these appeals is the same, and they will be disposed of in one opinion.

The first case, No. 5150, is an appeal from the judgment in the action involving the assessment and the tax levied thereon for "amount of money, notes and credits" in the sum of $75,000 for the year 1897. The averments of the complaint are to the effect that plaintiff was not, at the time of such assessment, the

owner of money, notes or credits subject to taxation, except in the sum of $12,000; that the assessment was made by the assessor fraudulently, unjustly and illegally, and through malice and ill-will. towards the plaintiff; that for the year 1897 the assessor uniformly assessed the class of property mentioned in the return made by him at one-half. of its value, but that with reference to the plaintiff, no such rule was adopted, but the property was assessed for its full value; that the plaintiff had applied to the board of county commissioners to have the excess above $12,000 set aside, which application was refused; that he had tendered the tax on this sum, which the treasurer refused; and that he is ready and willing to pay the tax on this amount, but the board and treasurer claim the right to require him to pay taxes on the full amount of $75,000.

Case No. 5151 is an appeal from the judgment rendered in the action attacking the assessment and tax levy thereon in the sum of $250,000 for "amount of money, notes or credits" for the year 1898. The averments of this complaint are to the effect that the assessment was made in gross, without any distinction between money, notes or credits, or whether the sum assessed was a statement of amount or value of the items mentioned; that the assessor had no reason to believe that plaintiff owned the property assessed against him, but that such assessment was made arbitrarily for the purpose of compelling plaintiff to appear before the board of county commissioners and submit to an examination touching his money, notes and credits. Plaintiff further avers that he made application to the board of county commissioners to have this assessment set aside, but that his application was never acted upon, and that a tax was levied against him upon the property as scheduled by the assessor, which the board and treas-

urer claim the right to collect. It is also alleged that plaintiff did not own the property for which he was assessed, and that the assessment was made by the assessor fraudulently and through malice and ill-will towards the plaintiff, and for the purpose of injuring and oppressing him. It is further averred that the assessment was made upon notes secured by mortgages on real estate. which real estate was also assessed.

No. 5152 is an appeal from the judgment rendered in the action involving the assessment and tax thereon for "amount of money, notes or credits" in the sum of $350,000 for the year 1899. Except as to amount and dates, the averments of the complaint are substantially the same as in No. 5151.

No. 5220 is an appeal from the judgment in the action attacking the assessment and tax levy thereon for the year 1900, in the sum of $100,000 on "money, notes and credits." The averments of the complaint in this action are to the effect that in the year 1900 the plaintiff, within the time and in the manner required by law, returned a schedule, wherein he charged himself with the sum of $858.06 as for "money, notes and credits" held by him subject to taxation in the county of Arapahoe for that year; that after this return the assessor, without his knowledge or consent, charged against him, for money, notes and credits, the additional sum of $99,141.94; that the county commissioners assessed taxes against him upon this additional sum; that the assessor added this sum, without making any distinction between money, notes or credits, or whether this sum was a statement of amount or value of the items mentioned; that this addition was made on the conjecture of the assessor, and without reason to believe that plaintiff owned or possessed the property represented by this addition to his assessment, as

returned, and that in making such assessment the assessor acted arbitrarily, and upon conjecture only.

Plaintiff further alleges that the tax schedule made and returned by him to the assessor as above stated was a true and correct schedule of his personal property subject to taxation in the county of Arapahoe for the year 1900; and that within the time appointed by law, the plaintiff applied to the board to have the additional assessment against him set aside as illegal, which application was denied.

Plaintiff further charges that for the year 1900 property under the denomination of "moneys, notes and credits" was uniformly assessed at one-half of the amount thereof, and that in the year 1900 he did not own, and was not possessed of, the personal property represented by the additional assessment made by the assessor, but that the treasurer intends to collect the taxes levied upon this additional assessment.

To each of these complaints an answer was filed. Upon the issues thus formulated there was a trial to the court, with the result that in the first case the plaintiff was nonsuited, and in the next two cases the complaints were dismissed, from which judgments the plaintiff appeals. In the fourth case judgment was rendered for the plaintiff, annulling the additional assessment, and enjoining the collection of taxes thereon, from which judgment the defendants appeal.

In the first case the only witness called was the assessor, who was called as a witness for plaintiff. It is claimed that his testimony established that he had no knowledge upon which to base an estimate of the value of the property which he scheduled against the plaintiff. In the second and third cases the testimony introduced was that of the assessor, who was called as a witness for the plaintiff, and the

testimony of the plaintiff himself. In these cases it is also claimed by counsel for appellant that the testimony establishes that the assessor did not have sufficient knowledge upon which to base an estimate of the value of the property which he scheduled against the plaintiff, and that he made such assessments without having reason to believe that the plaintiff had the property so assessed, and that the evidence discloses that the assessments against the plaintiff in these cases were upon real estate mortgages.

In these three cases the errors assigned are, substantially, that the assessments were not based upon the value of the property scheduled; that such assessments were made by the assessor arbitrarily, and for a corrupt purpose; that they were made without the assessor's having any reason to believe that the plaintiff had the property so assessed against him; and in the second and third cases, that such assessments were upon notes secured by mortgages on real estate. Errors are also assigned upon the reception and rejection of testimony.

On behalf of the appellees in these cases, counsel contend that the respective complaints do not state a case which justifies the interposition of a court of equity to annul the respective assessments or enjoin the collection of taxes thereon. In the case appealed by the defendants a reversal of the judgment is asked upon the same ground, while counsel for appellee contend it should be affirmed for substantially the same reasons which they assign in support of their contention that the judgments in the first three cases should be reversed, it being their contention, also, in all of the cases, that a court of equity has jurisdiction to grant the relief prayed for in the respective complaints, set aside the re-

spective assessments, and enjoin the collection of taxes thereon.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The grounds upon which counsel for plaintiff rely in support of their contention that the assessments are illegal and void in the first three cases, are, that they were the product of fraud, prejudice, bias and ill-will of the assessor, and at the time of making them, he had no knowledge, reason to believe, or evidence that plaintiff was the owner of any money, notes or credits subject to taxation. In the last case it is claimed the assessment is illegal and void because arbitrarily made by the assessor, without reason to believe that plaintiff was the owner of the property assessed. It is also claimed that the assesment in each case is illegal because plaintiff, for the years mentioned, was not the owner of any property subject to taxation of the character described except the amount admitted in the first case, and that the assessments in controversy in the second and third cases are illegal and void because all notes of which the plaintiff was the owner in 1898 and 1899 were secured by mortgages on real estate, and not taxable. In each case it is also claimed there was an unjust discrimination against plaintiff, and that the respective assessments were not predicated upon "value" but upon "amount." In brief, counsel for plaintiff contend the respective complaints allege facts from which it appears the assessments were fraudulent; that he did not possess property of the character described subject to taxation in the amount scheduled by the assessor; that in the years 1898 and 1899 he possessed no notes or other evidences of indebtedness except such as were secured by mortgages on real estate; that the

assessor unjustly discriminated against him in valuing the property which he scheduled, and that such assessments were based upon "amount" instead of "value."

It will be observed that neither of the complaints contain any averments with respect to any attempt on the part of the defendants to collect taxes levied upon the assessments in controversy, but that the only averments on this subject are to the effect that the board and treasurer claim the right to collect these taxes. It will also be observed that neither of the complaints contains any statement of issuable facts from which it can be said to appear that the plaintiff will suffer irreparable injury because of the assessments complained of, or that he has not an adequate remedy at law, to protect him from the consequences of the assessments in question. if they are illegal and void, as contended.

Many authorities are cited by counsel for plaintiff which hold that collection of an illegal tax will be enjoined; but illegality alone is not sufficient to invoke the interposition of a court of equity to enjoin the collection of a tax. In addition it must appear, as a general rule, that its collection will result in irreparable injury to the person against whom it is enforced, or lead to a multiplicity of suits, or that he has no adequate remedy at law to redress the wrong which will result from the enforcement of its collection against him.—*State Railroad Tax Cases*, 92 U. S. 575; *Boyd v. Selma*, 96 Ala. 144; *Dodd v. City of Hartford*, 25 Conn. *232; *Green v. Mumford*, 5 R. I. 472; *Dows v. City of Chicago*, 11 Wall. 108; *Messeck v. Board of Supervisors*, 50 Barb. 190; *Hannewinkle v. Georgetown*, 15 Wall. 547; *Odlin v. Woodruff*, 31 Fla. 160; *Loud v. City of Charlestown*, 99 Mass. 208; *Sayre v. Tompkins*, 23 Mo. 443; *Barrow v. Davis*, 46 Mo. 394; *McPike v. Pew*, 49 Mo. 525; *Henry v.*

*Gregory*, 29 Mich. 68; *Youngblood v. Sexton*, 32 Mich. 406; *Ritter v. Patch*, 12 Cal. 298; *Conley v. Cheddic*, 6 Nev. 222; *Susquehanna Bank v. Board of Supervisors*, 25 N. Y. 312; *Van Cott v. Board of Supervisors*, 18 Wis. 259; *City of Highlands v. Johnson*, 24 Colo. 371; *Ins. Co. v. Bonner, Ib.* 220; *Ins. Co. v. Bonner*, 7 Colo. App. 97; High on Injunctions (4th ed.), § 491.

The reasons for this rule have been variously stated by the courts, to the effect that a state cannot exist unless taxes are regularly and promptly paid into its treasury; that a court of equity never assumes jurisdiction where the party invoking its aid may redress his alleged grievances in an action at law; that the levy of taxes is a legislative, and not a judicial function; and that a court can neither make, nor cause to be made, a new assessment if the one complained of be erroneous.

In *State Railroad Tax Cases, supra,* it was held (quoting from the syllabus):

"While this court does not lay down any absolute rule limiting the powers of a court of equity in restraining the collection of taxes, it declares that it is essential that every case be brought within some of the recognized rules of equity jurisdiction, and that neither illegality or irregularity in the proceedings, nor error, or excess of valuation, nor the hardship or injustice of the law, provided it be constitutional, nor any grievance which can be remedied by a suit at law, either before or after the payment of the tax, will authorize an injunction against its collection.

"This rule is founded on the principle that the levy of taxes is a legislative, and not a judicial, function, and the court can neither make, nor cause to be made, a new assessment, if the one complained of be erroneous; and also in the necessity that the taxes

without which the state could not exist should be regularly and promptly paid into its treasury.''

On these questions the court, at page 614, says:

"We do not propose to lay down in these cases any absolute limitation of the powers of a court of equity in restraining the collection of illegal taxes, but we may say, that in addition to illegality, hardship or irregularity, the case must be brought within some of the recognized foundations of equitable jurisdiction, and that mere errors, or excess in valuation, or hardship, or injustice of the law, or any grievance which can be remedied by a suit at law, either before or after the payment of taxes, will not justify a court of equity to interpose by injunction to stay collection of a tax.  One of the reasons why a court should not thus interfere as it would in any transaction between individuals, is, that it has no power to apportion the tax, or to make a new assessment, or to direct another to be made by the proper officers of the state.  These officers and the manner in which they shall exercise their functions are wholly beyond the power of the court, when so acting.  The levy of taxes is not a judicial function. Its exercise by the constitutions of all the states, and by the theory of our English origin, is exclusively legislative.  A court of equity is, therefore, hampered in the exercise of its jurisdiction by the necessity of enjoining the tax complained of in whole or in part, without any power of doing complete justice by making, or causing to be made, a new assessment on any principle it may decide to be the right one. In this manner it may, by enjoining the levy, enable the complainant to escape wholly the tax for the period of time complained of, though it be obvious he ought to pay a tax, if imposed in the proper manner.''

Applying these principles to the case at bar, it appears that the respective complaints do not state a cause of action, which entitle the plaintiff to the relief prayed. He states no issuable facts from which it is made to appear that he will suffer irreparable injury in the event the collection of the tax for the respective years assessed against him is enforced, nor does it appear from any averments of the complaint that the wrongs of which he complains may not be adequately redressed in an action at law.

Besides, our statutes appear to afford a legal remedy. By § 3795, Mills' Ann. Stats., it is provided that the board of county commissioners shall have power at any regular meeting to rebate, annul or set aside an assessment made by the assessor. We do not wish to be understood, however, as holding that this section is applicable. Counsel for the defendants assert that it is, and this assertion is not controverted by counsel for plaintiff. It may be that this section is superseded by § 3795a, 3 Mills' (Rev.) Stats. By § 3777, 2 Mills' Ann. Stats., it is provided that taxes paid which shall thereafter be found to be erroneous or illegal, shall be refunded, without abatement or discount, to the taxpayer. No statement appears in either of the complaints from which it can be deduced that the remedy afforded the plaintiff by this section is not adequate.

But counsel for plaintiff contend that the general rule as above announced is not applicable because the assessments attacked are void on account of fraud. If fraud creates an exception, and fraud is pleaded, then the respective complaints still fail to state a cause of action. As we read the authorities cited by counsel, they only go to the extent of holding that equity will enjoin the collection of a tax based on a fraudulent assessment, without regard to the question of an adequate remedy at law; but they

do not hold that such a tax will be enjoined without a showing that the party against whom it is assessed is, or will be, injured thereby. As the foundation of every suit in equity it must appear that the plaintiff has a wrong to redress, which, if not redressed, will result in an injury to him. It does not appear from either of the complaints, that in the present status of the tax proceedings the plaintiff has been, or will be, injured thereby. No attempt has been made by the defendants to collect the taxes in question. All the respective complaints say on this subject is to the effect that the board and treasurer claim the right to collect them; but this is far from stating a case which exhibits an injury to the plaintiff. So far as it appears from the record, he may never be called upon to pay these taxes, nor any steps taken to enforce their collection against him, so that it wholly fails to appear that any wrong has been, or will be, inflicted which should be redressed.—*Insurance Co. v. Bonner,* 7 Colo. App. 97. Conceding, then, that a tax levy upon a fraudulent assessment is excepted from the general rule as above announced, the exception only applies to cases where it appears that the party complaining has been, or will be, injured by such assessment and levy.

Other questions are argued for defendant in support of their contention that the respective complaints do not state a cause of action, which it is unnecessary to pass upon; neither is it necessary to consider any of the numerous questions argued by counsel for plaintiff in support of their contention that the assessments and the taxes levied thereon are invalid, because no case is made presenting them.

For the reason that the respective complaints do not state facts from which it appears that the plaintiff has been, or will be, injured because of the assessments complained of, and the taxes levied

thereon, the several judgments in cases Nos. 5150, 5151 and 5152 will be affirmed, and the judgment in No. 5220 will be reversed.    *Reversed.*

Decision *en banc.*

Chief Justice Steele not participating.