## OAKWOOD INDEPENDENT SCHOOL DIST. et al. v. LIBERTY COMMON SCHOOL DIST. NO. 34. (No. 703.)

Court of Civil Appeals of Texas. Waco. Sept. 27, 1928.

Rehearing Denied Nov. 1, 1928.

C. S. & J. E. Bradley, of Groesbeck, for appellants.

P. O. French and R. L. Williford, both of Fairfield, for appellee.

GALLAGHER, C. J. This suit was instituted by appellee, Liberty Common School District No. 34, against appellants Oakwood Independent School District and J. O. Nichols, tax assessor, and W. F. Williamson, tax collector of Freestone county. The only relief sought by appellee was an injunction restraining appellants, respectively, from levy-ing, assessing, or collecting any taxes on behalf of said Oakwood independent school dis-trict within the boundaries of a certain strip of land lying in Freestone county, which appellee alleged constituted a part of said common school district No. 34, and which it alleged was not embraced within the limits of said independent school district. There was a trial to the court. The evidence disclosed that the village of Oakwood, with certain surrounding territory situated in Leon county, together with certain territory situated in Freestone county, was incorporated for free school purposes only under the general laws of the state in the year 1900. The territory in Freestone county so embraced in said corporation is the identical territory in dispute in this case. The order of the county judge of Leon county declaring said village and said surrounding territory incorporated for school purposes further declared that said corporation should be known as "Oakwood School District." There is no contention that there was any illegality in the incorporation of said district, except the fact that it embraced lands lying in two different counties and constituted what is commonly known as a county line district. On May 15, 1909, after the Supreme Court of this state had held that there was no constitutional authority for the formation of such districts, said village of Oakwood, with that part of the territory of the former district lying wholly in Leon county, was incorporated for free school purposes only by a vote of the people, under the provisions of the general laws of the state. The order of the county judge declaring said territory incorporated for school purposes declared that said corporation should be known as "Oakwood Independent School District." A board of trustees for the newly created district was duly elected. Whether the members of the board of trustees of the old district were chosen as trustees of the new district does not appear. There is evidence, however, tending to show that at least one of the trustees of the former district was chosen as a trustee of the new district in such election. In June, 1909, at an election participated in only by the qualified taxpaying voters residing in the new district, bonds in the sum of $10,000 were voted for the purpose of building a schoolhouse. Said bonds were issued and dated July 10, 1909, which was shortly before the constitutional amendment validating county line districts.

After the adoption of said constitutional amendment, pupils of scholastic age residing in the disputed territory in Freestone county were regularly enumerated as a part of the scholastic population of said independent school district, and the per capita apportionment therefor paid to the same. At all elections for school trustees for said independent district thereafter held the qualified voters

residing in said disputed territory participated, and from time to time one or more of the residents of said disputed territory were elected and served as such trustees. The children of scholastic age residing in said disputed territory attended said Oakwood school from the original incorporation in 1900 until the time of trial, and one of the schools maintained by said district was situated therein. In 1913, apparently under the advice of the Attorney General of the state, an election was held, in which the qualified taxpaying voters residing in the entire territory embraced in the original district created in 1900 participated, by which election the bonds so issued were declared validated and were declared to be valid obligations of the entire district as originally created and a tax was voted to pay the same. An additional tax was voted for the maintenance of the schools in said independent district. Said taxes were regularly levied and collected until the institution of this suit.

Liberty common school district was created by an order of the commissioners' court of Freestone county on September 6, 1906. According to its field notes, said district bordered on the north line of the Oakwood independent school district, but none of the territory of said independent district was included therein. No action by the school authorities of Freestone county with reference to said disputed strip until July 5, 1919, was shown. On that date the county board of education of said county increased the territory of Liberty common school district by adding thereto the territory in dispute. On July 12, 1920, said board of education ordered "the Liberty Common School District line re-established so as to conform with Oakwood Independent School District line as approved by Attorney General and the State Superintendent." Other than the testimony above referred to with reference to the approval by the Attorney General of the election of 1913, no other action by that officer was shown. After the filing of this suit the respective boards of education of Leon and Freestone counties held a joint meeting on August 27, 1927, and adopted a resolution declaring that the territory in dispute, which was a part of the Oakwood independent school district created in the year 1900, was not at that time a part of any school district in Freestone county, and that the same, if not already a part of said independent school district, should be added thereto. The parties on the trial of the case agreed that appellant Nichols was tax assessor and appellant Williamson was tax collector of Freestone county, and that they were, respectively, assessing and collecting school taxes for said independent district on property situated in the disputed territory, and that such action was authorized and directed by the trustees of said independent school district. There was neither admission nor proof that

the levy of a school tax by or for Liberty common school district had been lawfully authorized nor that any such tax had been in fact levied or assessed against any of the property situated in said disputed territory.

The court entered a decree, perpetually enjoining appellants from assessing and collecting or attempting to assess or collect on behalf of or for the benefit of said Oakwood independent school district, school taxes upon and against any and all property, real or personal, lying within the boundaries of said disputed territory. Said decree is here presented for review.

## Opinion.

■ Appellants by appropriate propositions contend that the court erred in enjoining them from levying, assessing, and collecting school taxes on the property situated in said disputed territory, claiming that appellant district as originally created, embracing territory in Leon county as well as the territory in dispute in Freestone county, was thereafter validated by the constitutional amendment hereinbefore referred to. Said amendment was declared adopted on September 24, 1909, and is in part as follows:

"Every school district heretofore formed, whether formed under the general law or by special act, and whether the territory embraced within its boundaries lies wholly within a single county or partly in two or more counties, is hereby declared to be, and from its formation to have been, a valid and lawful district." Constitution, art. 7, § 3a.

This amendment was construed and its effect declared by our Supreme Court in the case of Gillespie v. Lightfoot, 103 Tex. 359 et seq., 127 S. W. 799. That case involved the status, after the adoption of said amendment, of the Mart High School, an independent school district previously incorporated under general law. Said district included the town of Mart and surrounding territory lying in McLennan, Falls, and Limestone counties. After the decision of the Supreme Court in Parks v. West, 102 Tex. 11, 111 S. W. 726, said independent school district ceased to function. The town of Mart, the nucleus of said independent district, assumed control of its schools, and became itself an independent school district, under the provisions of sections 134, 135, and 144 of chapter 124, General Laws 1905, p. 263 et seq. The territory in Falls and Limestone counties was distributed by the respective commissioners' courts to common school districts. The several districts thus brought into existence were fully organized, with trustees elected, taxes levied to support schools, schoolhouses built, and contracts made with teachers, under which schools were being carried on. After the adoption of said constitutional amendment, the trustees of said Mart High School county line district again assumed control of all the territory originally embraced therein, and

the issuance of bonds of such district was duly authorized by the property taxpaying voters residing therein. The Attorney General refused to approve said bonds, and mandamus proceedings were instituted by said independent district to compel such approval. The Supreme Court held that the Mart High School district, as orginally created, was validated by said amendment, and that the new districts created out of its territory after the decision in the case of Parks v. West and before the adoption of said constitutional amendment were thereby superseded. We quote from the opinion in Gillespie v. Lightfoot, above referred to (103 Tex. page 365 [127 S. W. 803]), as follows:

"As we have before pointed out, there can be no question that the infirmity in county-line districts, due to a want of constitutional authority to form them, is cured, and that those districts are all declared to have been valid from the first to the same full extent. It must follow, as we have also said, that every district, however established, that is inconsistent with the will of the people thus expressed must go down before the amendment."

There was no law at the time by virtue of which another independent district could have been created within and embracing a part only of the territory included in the original Oakwood independent school district, as was done in this case, had such original district been valid at the time, nor by virtue of which such newly created district could have authorized the issuance of bonds. Such newly created district must therefore go down before said amendment, but the suppression thereof did not operate to destroy the obligation created by the issuance of such bonds, and provision for the payment of the same was properly made, notwithstanding such suppression. Gillespie v. Lightfoot, supra (bottom page 366 of 103 Tex. [127 S. W. 799]).

Appellee contends that the original Oakwood school district was abandoned, and that only the new district formed in 1909 continued to function. This contention is based in part on the fact that the order of the county judge declaring the original district duly incorporated for school purposes only called it "Oakwood School District," and the order of the county judge declaring the new district created in 1909 duly incorporated for such purposes called it "Oakwood Independent School District." There was at the time no statutory authority vested in the county judge to give such a district a distinctive corporate name. Districts so incorporated were commonly known as independent school districts, and were so called in the statutes regulating the election of their trustees. Gen. Laws, 1st Called Sess. 26th Leg. p. 18. Both the original district and the new district created in 1909 were in fact independent school districts. Appellee's said contention is further based on the fact that there is no

proof that, after the adoption of said constitutional amendment, the trustees of said independent district, who were in office at the time of the decision in Parks v. West, resumed control thereof. As heretofore stated, the record does not show affirmatively whether the trustees elected at the incorporation of the new district in 1909 were other or different men from those in office at the time as trustees of the original district, nor do we deem such showing material to the determination of the issue involved. The record does show affirmatively that in every election of trustees, from the adoption of said amendment down to the institution of this suit, all qualified voters residing in the disputed territory were permitted to participate, and that many of them did participate, in the election of trustees for said district, and that the trustees so elected claimed to be and purported to act as trustees of the district as originally constituted. The election held in 1913, for the purpose of validating the bonds issued by the suppressed district as obligations of the entire original district, and authorizing the levy of taxes for the payment of such bonds and the maintenance of schools therein, is conclusive proof that the trustees in office at that time claimed to be trustees of the Oakwood independent school district as originally created in 1900, and were purporting to act as such. The court erred, under the evidence in this case, in holding in effect that the original Oakwood independent school district, as created in 1900, was not validated by said amendment, and that the disputed territory did not constitute a part thereof. Gillespie v. Lightfoot, supra; Davis v. Parks (Tex. Civ. App.) 157 S. W. 449, 452-454, pars. 3-5 (writ refused).

Appellants contend that appellee is without capacity to maintain this suit and to demand the relief therein sought. Appellant district claims to be acting under the authority of the original incorporation attempted to be effected in 1900 and validated by constitutional amendment in 1909. It has, according to the testimony introduced, been claiming the benefit of said amendment and acting thereunder since the year 1910, and under such claim it exercised corporate authority over the disputed territory from that date until the time of the institution of this suit in June, 1927. The record discloses no attempt by the school authorities of Freestone county to exercise any authority or control over the disputed territory until 1919, when the county board of school trustees ordered it attached to Liberty common school district. During the next year said board apparently abandoned any claim thereto, and ordered the line of Liberty school district re-established so as to conform to the line of the independent district. It reasonably appears from the evidence as a whole that the line referred to in said order was the line originally established

in 1900, and which appellant, under and by virtue of said validating amendment, had claimed as its corporate boundary for ten years immediately preceding said order. Appellee's action to enjoin appellant from levying, assessing, and collecting taxes in the disputed territory is a collateral attack on the corporate character of said validated district. Such an attack can be made only by the state or under its authority. Martin v Grandview Independent School District (Tex. Civ. App.) 266 S. W. 607, 608, par. 3. (writ refused), and authorities there cited; Harbin Independent School Dist. v. Denman (Tex. Com. App.) 222 S. W. 538; Kuhn v. City of Yoakum (Tex. Com. App.) 6 S.W.(2d) 91, and authorities there cited.

■■■ Appellants further contend that appellee has neither alleged nor proved any lawful right to enjoin the levy, assessment, and collection of school taxes by appellant within the disputed territory, nor any irreparable injury if such restraint is not granted. There is no contention that appellee owns any property in said territory on which a school tax could be levied or assessed by appellants. There is no contention that the levy, assessment, or collection by appellants of such a tax could in any way affect the property rights of appellee. There is no contention that its legal right (if it has such right) to levy, assess, and collect taxes on the property situated in said territory will be in any way defeated or impaired by the threatened action of appellants. The supposed irreparable injury upon which appellee bases its claim for equitable relief is merely the moral effect which it alleges the threatened action of appellants will have upon the property taxpayers of said territory. The extent of such effect and of the injury, if any, resulting therefrom is purely theoretical. The general rule is that only a taxpayer subject to the payment of a tax can enjoin the collection of the same. We quote from 4 Pomeroy, Eq. Juris. pp. 4164, 4165, § 1790 (section 367), as follows:

"An injunction against the collection of a tax will be granted only at the suit of a taxpayer. The same degree of interest is requisite as in all other cases where the extraordinary aid of equity is invoked. Thus the collection of a school tax cannot be enjoined at the suit of a board of education, because the board, as such, is not a taxpayer. Nor at the suit of a municipal corporation suing in the interest of its taxpayers; nor at the suit of the state. Relief has been refused to creditors of the taxpayer."

The author cites in support of the text quoted the following authorities: Board of Education v. Guy, 64 Ohio St. 434, 60 N. E. 573; Town of Donaldsonville v. Police Jury, 113 La. 16, 36 So. 873; State v. Shufford, 77 Kan. 263, 94 P. 137; Carpenter v. Jones County, 130 Iowa, 494, 107 N. W. 435. We also quote from Cooley on Taxation, pp. 3348, 3349, § 1655, as follows:

"It is a general principle that one will not be heard to complain of action which is not injurious to him. * * * Complainant must show that he has suffered or will suffer injury. * * * One cannot maintain a bill to restrain the collection of a tax from another * * * and a city cannot enjoin the collection within its limits of a tax to pay bonds alleged to be illegal. The city has no property subject to taxation, and whether the taxes levied upon citizens shall be collected or not is a matter of their own concern."

The author cites in support of the text quoted the following authorities: Hallett v. Board of Commissioners Arapahoe County, 40 Colo. 308, 90 P. 678; Holt v. Hendee, 248 Ill. 288, 93 N. E. 749, 21 Ann. Cas. 202; Peirce v. Carlock, 224 Ill. 608, 79 N. E. 959; Marye v. Parsons, 114 U. S. 325, 5 S. Ct. 932, 962, 29 L. Ed. 205; Waverly v. Auditor, 100 Ill. 354.

Appellee was not, under the pleadings and evidence, entitled to the injunction sought by it and granted by the court. The judgment of the trial court is therefore reversed, and judgment is here rendered for appellant, denying such relief.