FARMERS GRAIN DEALERS ASSOCIATION OF IOWA, now known as American Grain and Related Industries, Appellant,

v.

Ralph WOODWARD, Chairman, Charles Colby, Jr., Harry Burgess, Walter Potts, Jr., and Everett Sather, Constituting the Board of Review of Assessments of Polk County, Iowa, and Harry Renaud and Clifford Custor, former members of said board; Jack Bishop, Chairman, Sam Anania, Tom Whitney, Richard Brannan, and Murray Drake, Constituting the Board of Supervisors of Polk County, Iowa; and Jim Maloney, Auditor of Polk County, Iowa, and Fred Horner, Treasurer of Polk County, Iowa, Appellees.

No. 67322.

Supreme Court of Iowa.

May 18, 1983.

Rehearing Denied June 9, 1983.

Elmer J. Jones and Robert A. Engberg of Pryor, Riley, Jones & Aspelmeier, Burlington, and John Carty, Winfield, for appellant.

Dan L. Johnston, County Atty., and Norman G. Jesse, Asst. County Atty., for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, LARSON, and SCHULTZ, JJ.

UHLENHOPP, Justice.

In this appeal of a mandamus action, taxpayer American Grain and Related Industries seeks to recover claimed over payment of real estate taxes and alleges excessive valuation of the property taxed. Defendants are county officers concerned with assessment and collection of property taxes; for convenience we will refer to them as the county. Our references are to the Iowa Code of 1971, and we will speak in this opinion of the Iowa law as of that time.

The county assessor placed the actual value of the property at $3,815,703 as of January 1, 1971. Taxpayer timely protested this value before the board of review, which reduced it to $3,249,611. Taxpayer then appealed to district court, which affirmed. Taxpayer paid the 1971 taxes of $110,174.22, which were based on the valuation of the board of review, but appealed from the district court judgment to this court. We decided the case in 1978. *Farmers Grain Dealers Ass'n of Iowa v. Sather,* 267 N.W.2d 58 (Iowa 1978).

While these proceedings were in progress regarding the 1971 valuation, the assessor valued the property for the following years as they ensued using the same figure of $3,249,611. Taxpayer did not protest the value for 1972 before the board of review and then appeal to court, but paid the 1972 tax when due in the amount of $108,887.22

(evidently a different millage rate). The same occurred in 1973 (tax of $146,955.69) and 1974 (tax of $95,953.26).

In our decision in 1978, we reduced the value for 1971 to $1,000,000, stating:

> We, therefore, reverse the judgment of the trial court, and fix the fair market value of plaintiff's real estate for the year 1971 at $1,000,000. The defendant Board is directed to correct its records accordingly, and to certify the same to the Board of Supervisors of Polk County so that plaintiff's tax for the year 1971 may be recomputed on the basis of such assessment.

267 N.W.2d at 63. Our holding had the effect of reducing the 1971 tax to $33,-907.68, or $76,266.54 less than paid. The county refunded this difference.

On a valuation of $1,000,000 for each of the years 1972, 1973, and 1974, the taxes would have totaled $108,269.51 for those three years instead of $451,796.17 actually paid, or a difference of $343,526.66. Taxpayer demanded a refund of this difference claiming that the value of $1,000,000 which we ultimately found for 1971 automatically fixed the values for 1972, 1973, and 1974 as well. The county asserted that a value is affixed to property each year for tax purposes, the value was actually so affixed, taxpayer did not protest or seek judicial review for the values affixed in 1972, 1973, and 1974, and those values therefore became final.

Taxpayer then sought relief in this court, and we referred taxpayer to the district court. Taxpayer thereafter brought this mandamus action in district court, asking a refund of the difference in the taxes over the three years. After trial, the district court held for the county. Taxpayer appealed, and we transferred the case to the Court of Appeals, which reversed. We then granted the county's application for further review. The question is whether a challenge to a valuation in the first year of a four-year property-tax cycle automatically constitutes a challenge in the following three years, or whether the taxpayer must protest and appeal the value the assessor

actually places on the property in each of those years. Our decision in 1978 does not itself purport to determine the values for 1972, 1973, and 1974. In that case we fixed the value "for the year 1971" and directed the county to change its tax records "for the year 1971". 267 N.W.2d at 63.

■ I. Taxpayer's ground of resistance to further review that the county's service of the application was too late is overruled. Iowa R.App.P. 20.

II. On the merits we initially review the relevant portions of the statutes in 1971 governing real estate tax assessment. Section 428.4 of the Code of 1971 provided:

> Property shall be taxed each year, and personal property shall be listed and assessed each year in the name of the owner thereof on the first day of January. Real estate shall be listed and valued in 1971 and every four years thereafter, and in each year in which real estate is not regularly assessed, the assessor shall list and assess any real property not included in the previous assessment. . . .

Section 441.1 established the office of assessor. Section 441.17 provided:

> The assessor shall:
>
> . . . .
>
> 2. Cause to be assessed, in accordance with section 441.21, all the property, personal and real, in his county or city as the case may be. . . .
>
> . . . .
>
> 7. Submit on or before May 1 of each year completed assessment rolls to the board of review.
>
> . . . .

Section 441.18 provided:

> Each assessor shall, with the assistance of each person assessed, or who may be required by law to list property belonging to another, enter upon the assessment rolls the several items of property required to be entered for assessment. He shall personally affix values to all property assessed by him.

Section 441.26 required assessment rolls, itemizing the taxable real and personal

property and the values affixed thereto and notifying the taxpayer of the right to protest the assessment before the board of review between May 1 and May 20. The section also required that a copy of the roll be delivered to the taxpayer.

Section 441.28 required that the assessment be completed "not later than April 30."

Section 441.31 established the board of review, section 441.33 required sessions by the board from May 1 to 31 and, with extensions, to August 1, and section 441.35 provided:

The board of review shall have the power:

1. To equalize assessments by raising or lowering the individual assessments of real property including new buildings, personal property or moneys and credits made by the assessor.

2. To add to the assessment rolls any taxable property which has been omitted by the assessor.

In any year after the year in which an assessment has been made of all of the real estate in any taxing district, it shall be the duty of the board of review to meet as provided in section 441.33, and where it finds the same has changed in value, to revalue and reassess any part or all of the real estate contained in such taxing district, and in such case, it shall determine the actual value and compute the taxable value thereof, and any aggrieved taxpayer may petition for a revaluation of his property, but no reduction or increase shall be made for prior years.

Section 441.37 provided:

Any property owner or aggrieved taxpayer who is dissatisfied with his assessment may file a protest against such assessment with the board of review on or after May 1, to and including May 20, of the year of the assessment.... Said protest shall be in writing and signed by the one protesting or his duly authorized agent. Taxpayer may have an oral hearing thereon if request therefor in writing is made at the time of filing the protest.

Said protest must be confined to one or more of the following grounds:

1. [Inequitable value compared with other property.]

2. [Assessed for more than value.]

3. [Property not assessable.]

4. [Error in assessment.]

5. [Fraud in assessment.]

In addition to the above, the property owner may protest annually to the board of review under the provisions of section 441.35, but such protest shall be in the same manner and upon the same terms as heretofore prescribed in this section.

Section 441.38 authorized appeal to district court from the board of review.

■ III. From early times in this state, each tax year has been separate; the assessment for the year is an individual assessment. *Trustees of Flynn's Estate v. Board of Review,* 226 Iowa 1353, 1362, 286 N.W. 483, 487 (1939); *Board of Supervisors v. Sioux City Stock Yards Co.,* 223 Iowa 1066, 1074, 274 N.W. 17, 22 (1937); *City of Davenport v. Chicago, R.I. & P. Ry.,* 38 Iowa 633, 639–40 (1874). A failure to make a timely protest or to take a timely appeal to court deprives the taxpayer of his protest or appeal and renders the assessment a finality for that year. *Grundon Holding Co. v. Board of Review,* 237 N.W.2d 755, 757 (Iowa 1976); *Stampfer Building Co. v. Board of Review,* 195 N.W.2d 390, 393 (Iowa 1972); *Jones v. Mills County,* 224 Iowa 1375, 1380, 279 N.W. 96, 99 (1938); *Griswold Land & Credit Co. v. County of Calhoun,* 198 Iowa 1240, 1243, 201 N.W. 11, 12 (1924); *Carpenter v. Jones County,* 130 Iowa 494, 497, 107 N.W. 435, 436 (1906); *Nugent v. Bates,* 51 Iowa 77, 80, 50 N.W. 76, 77 (1879); *Op. Iowa Atty. Gen.,* 416, 419 (1966). The statutes we have quoted and the decisions we have cited, as well as the statutes in the succeeding chapters on tax lists, tax levies, and tax collections establish an annual property tax system on which public budgeting, revenues, and expenditures depend for certainty and stability.

■ The first procedure in the property tax system, the assessing process, consists

of three steps: the placing of taxable property on the assessment rolls, the attaching of a value to each property, and the reviewing of those two steps by the board of review with appeal to the courts. This process is an exclusive one. *City of Council Bluffs v. Pottawattamie County,* 254 N.W.2d 18, 20 (Iowa 1977); *Midwestern Realty Co. v. City of Des Moines,* 210 Iowa 942, 945, 231 N.W. 459, 460 (1930); *Macklot v. City of Davenport,* 17 Iowa 379, 387 (1864). In Iowa the courts do not have parallel authority to assess property; they can only judicially review afterward, as the statute provides. *Midwestern,* 210 Iowa at 945, 231 N.W. at 460; *Griswold,* 198 Iowa at 1242, 201 N.W. at 12.

In the valuation step of the assessing process, a value is affixed to each property annually on the assessment rolls. At the time of these events the value affixed for personal property was its value on January first of the particular year (now every other year). Real property was valued as of January first of each fourth year (now every second year); that value was also the value affixed to the property for the three interim years with increases or decreases for changes in value since the first year. Iowa Code § 428.4 (1971); *James Black Dry Goods Co. v. Board of Review,* 260 Iowa 1269, 1275, 151 N.W.2d 534, 538 (1967), *cert. denied,* 390 U.S. 901, 88 S.Ct. 817, 19 L.Ed.2d 868 (1968). We note however that following *James Black Dry Goods* and effective for tax years 1973 and following, the General Assembly gave the assessor the additional duty of changing the interim value of real estate in the first part of this sentence: "In any year, after the year in which an assessment has been made of all real estate in any assessing jurisdiction, it shall be the duty of the assessor to value and assess or revalue and reassess, as the case may require, any real estate that he finds was *incorrectly valued or assessed,* or was not listed, valued and assessed, in the real estate assessment year immediately preceding, also any real estate he finds has changed in value subsequent to January 1 of the preceding real estate assessment year." 1972 Iowa Acts ch. 1104, § 4; Iowa Code § 428.4 (1973) (emphasis added).

IV. By the regular assessment process, the 1971 value of this property was placed at $3,249,611 by the board of review on protest and by the district court on appeal. That valuation was appealed to this court, but our finding on value was not known in 1972, 1973, or 1974. In 1972 the assessor had to place the property on the assessment rolls and affix a value to it. In doing so only one course of action was open to him. As no showing was made of a different value from 1971, for 1972 he had to use the 1971 value as the statute at the time provided. Accordingly he affixed a value of $3,249,611 for 1972.

For taxpayer, however, the situation was different. If taxpayer had not protested the 1971 valuation as excessive it would have faced the rule of *James Black Dry Goods* had it tried to protest the 1972 valuation as excessive—no intervening change of value appeared. But taxpayer *had* protested and appealed the 1971 valuation and thus kept it open. It thus did not have only one possible course of action; it had two alternatives. It could have protested and appealed the 1972 valuation as excessive and thus kept 1972 open as well. On the other hand, it could have simply paid the 1972 tax without protesting the valuation affixed by the assessor for that year. The 1972 value of $3,249,611 on the rolls would then become final and the 1972 tax year would become a closed book. *Nowhere did the statutes provide that a protest and appeal in one year sufficed as a protest and appeal for another year.* On the contrary, the statutes provided an *annual* protest procedure. Taxpayer took the second course of action.

Similarly in each of the years 1973 and 1974, the assessor placed the property on the rolls and affixed a value of $3,249,611. In neither year did taxpayer protest and appeal; it simply paid the tax. We note that in those years taxpayer could also have utilized the provisions which we have quoted from the Code of 1973.

Taxpayer confuses the statute requiring annual protests to the board and appeal to

the courts with the statute on quadrennial valuation of real property. Taxpayer's protesting and appealing the first year did not stop the assessment process for subsequent years; that process went forward each year with the usual right of protest and appeal. The General Assembly could have provided that a protest and appeal the first year automatically constituted a protest and appeal for the following years, but it did not do so. Perhaps the Assembly believed that local government needs to know which years are in contest and which are not, in planning and providing for expenditures and possible refunds.

We hold that this court's 1978 valuation for 1971 did not change the uncontested valuations which had become final for 1972, 1973, and 1974.

■ V. The result is not altered by section 445.60 of the 1971 Code:

The board of supervisors shall direct the treasurer to refund to the taxpayer any tax or portion thereof found to have been erroneously or illegally exacted or paid, with all interest and costs actually paid thereon.

The taxes for 1972, 1973, and 1974 were not erroneously or illegally exacted or paid. The assessment process proceeded strictly in accordance with statute in those years, with no protest by taxpayer; the assessor affixed the valuation from the previous year. As taxpayer did not protest in 1972, 1973, and 1974, the taxes resulting from the valuation affixed for those years were the correct and legal taxes.

Taxpayer's complaint is essentially excessive valuation in 1972, 1973, and 1974, but the remedy for that was protest to the board of review under the statute, not an action under section 445.60. *Cedar Rapids Hotel Co. v. Stirm*, 222 Iowa 206, 217, 268 N.W. 562, 567 (1936); *Griswold* 198 Iowa at 1245, 201 N.W. at 13 (1924); Throckmorton, *Judicial Review of Tax Assessments in Iowa*, 26 Iowa L.Rev. 723, 743–52 (1941). If taxpayer had preserved a contest of the 1972, 1973, and 1974 valuations by protest and appeal, and if, following our 1978 decision, the county had refused to refund the difference in taxes in each of those years, this mandamus action under section 445.60 would have been appropriate. But that is not what happened.

We thus reinstate the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.