[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These two cases are appeals from tax assessment increases on real property located in the Town of Hartford.
In the case of Allan Schaefer, et al vs. City of Hartford the plaintiffs, as lessees of property located at 805-807 Main Street, are obligated to pay the real property taxes on said premises.
In the case of Belmont Realty Company vs. City of Hartford the plaintiff, as owner of property located at 50 Belmont Street and 250 Hamilton Street, is obligated to pay the real property taxes on said premises. CT Page 5648
In the complaints it is alleged that the plaintiffs received from the tax collector of the City bills for taxes on the City's Grand Lists of October 1, 1989, through October 1, 1992; that such bills were substantially in excess of the amount of tax due based on the assessment on the City's Grand List of October 1, 1988; and that no notice of the type required by General Statutes 12-55 was given by the assessor to the plaintiffs concerning the increase in valuation. Plaintiffs seek orders setting aside the taxes laid and determining that the amounts of taxes due on the City's Grand Lists of October 1, 1989, 1990, 1991, and 1992 are based upon the assessments on the City's Grand List of October 1, 1988.
They also seek judgment, with interest and costs, for the difference between the amounts paid and the amount which should have been paid based on the assessments on the City's Grand List of October 1, 1988.
General Statutes § 12-55 provides in pertinent part:
 "(a) . . . The Assessor or board of assessors may increase or decrease the valuation of property as named in . . . the last-preceding grand list, but . . . in each case of any increase of valuation above the valuation of such property in the last-preceding grand list . . . they shall send written notice by mail of such increase in accordance with subsection (b) of this section, including in such notice the valuation prior to and after such increase with respect to each parcel of real property . . . the valuation of which has been increased to the last-known address of the person whose . . . valuation is so changed . . ."
 "(b) The written notice of assessment increase required in subsection (a) of this section shall be mailed on or before the tenth day immediately following the date on which the grand list abstract is signed and attested to by the assessor or board of assessors. If such assessment increase is sent later than the time period herein prescribed, such increase shall become effective on the next succeeding grand list."
Thus, the issue before the court is whether the assessor CT Page 5649 complied with the requirements of General Statutes § 12-55 when he increased the assessments on the 1989 through 1992 Grand Lists above the 1988 Grand List assessments.
In both cases it has been stipulated that from October 1, 1988 to March 24, 1994 the only notices sent by the Assessor of Hartford to the plaintiff concerning an increase in the assessment on the City's Grand Lists of October 1, 1989 October 1, 1990, October 1, 1991 and October 1, 1992 were two documents, each dated December 15, 1989. In the fourth paragraph of these documents plaintiffs were given the opportunity to attend a hearing wherein a revaluation firm would review the City's revaluation. Said paragraph stated:
 "INFORMAL REVIEW BOARD — Cole-Layer-Trumble Company, the revaluation firm, is conducting the City's 1989 property revaluation, and will make available personnel for the purpose of reviewing property values. A change in value will be considered only if the owner can demonstrate that the appraised value is in excess of market value. The appraisers will discuss market value only and are not permitted to discuss tax rates or estimated tax bills. Reviews will be scheduled by appointment only. A request for review must be made within 10 days from the date of this notice. Appointments may be made with the revaluation firm by calling the following phone number Monday thru Friday between 8:30 A.M. to 4:00 P.M."
 "BOARD OF TAX REVIEW — If the property owner is not satisfied with the results of the informal review, they may appeal to the Board of Tax Review, which will meet during March of 1990."
In response to said invitation the plaintiffs met with representatives of the revaluation firm on December 20, 1989. However, no notice was sent by the assessor, by the revaluation firm or by any other representatives of the City to the plaintiffs concerning the result of the December 20, 1989 meeting. The tax bills of the City to the plaintiffs on the City's Grand Lists of October 1, 1989, 1990, 1991, and 1992 were sent to plaintiffs in June of each year immediately following the date of each year's Grand List. Other than the notices dated December 15, 1989 mentioned above and the tax CT Page 5650 bills, no other notice was sent by the assessor or by any other representative of the City to plaintiffs concerning an increase in the assessment on the Grand Lists of October 1, 1989 through October 1, 1992. The City's Grand List of October, 1989 was signed and attested to by the assessor on February 28, 1990.
The parties have further stipulated that the assessor can change the assessment on real property on a particular grand list at any time until he signs and attests to that grand list, but he cannot change an assessment on a grand list after that grand list has been signed and attested to by him.
The plaintiffs in these cases argue that the City failed to give the notice required by General Statutes § 12-55. The court agrees. The statute requires that notice of an increase must be mailed "on or before the tenth day immediatelyfollowing (emphasis added) the date on which the grand list abstract is signed and attested to by the assessor or Board of Assessors." Clearly this was not done. The notice dated December 15, 1989 was not sent "on or before the tenth dayimmediately following" the date on which the grand list was signed and attested to. In fact, the December 15, 1989 documents were mailed several weeks prior to the signing. The statute deals with notice of an assessor's action to increase the valuation of property. Since he may only increase the valuation of property by signing and attesting to a grand list which places a higher valuation on a particular property than the immediately preceding grand list, it is only the assessor's act of signing and attesting to a grand list which can increase the valuation of property. Therefore, the notice called for by Section 12-55 is notice of the act which is completed when a grand list containing an increased assessment signed and attested to.
The parties have stipulated that a property owner's assessment does not become fixed on a particular grand list until that grand list is signed and attested to by the assessor. Further, they have stipulated that an assessor can change and rechange the value on a piece of property on a grand list until the moment when that grand list is signed and attested to.
In regard to the Schaefer case it has been stipulated that the tax bill which was sent by the City in June 1990 to CT Page 5651 Allan Schaefer for taxes on the City's Grand List of October 1, 1989 stated an assessed value which was lower than the assessed value stated in the December 15, 1989 document, although higher than the assessed value on the October 1, 1988 Grand List. Thus, in the Schaefer case the only notice of the final increased assessment was the bill which was received in June 1990.
In regard to the Belmont property, the court notes that Belmont had leased its property to the State of Connecticut for a term of four years. The lease obligates the State to pay 99% of all property tax increases provided Belmont Realty gives the State notice of any increased assessment within ten days after Belmont receives notice of such increase. Belmont notified the State of the increase on March 20, 1990. The State denied liability for taxes due as a result of the increase in the 1989 assessment because it hadn't received the ten-day notice. If the City is correct that the December 15, 1989 notices comply with Section 12-55, then Belmont Realty would have been required to notify the State of an increased assessment within ten days after receiving the December 15 letter. However, if it had done so and then prevailed on the re-evaluation firm to reduce the new assessment, Belmont Realty would have then been required to give a second notice to the State. Since, (as the Stipulations have established) the assessor could again change the assessment until the grand list was actually signed, a third notice to the State might have been required.
The Schaefer and Belmont notices dated December 15, 1989 cannot constitute notice of a change which, as of then, had not yet occurred. Rather, these notices were simply notices of the assessor's then present, conditional intention to make a change. The court believes that the only plausible construction of Section 12-55(b) is that notice of an increase must be sent out after the steps necessary to an increase have been completed. The court holds that General Statutes § 12-55 is for the benefit and protection of taxpayers, so that strict compliance by a municipality is required. Rocky Hill Incorporated District v. Hartford RayonCorporation, 122 Conn. 392 (1937); Empire Estates, Inc. v.Stamford, 147 Conn. 262.
Furthermore, at the very least, the court believes there is an ambiguity in the interpretation of Section 12-55(b). CT Page 5652 "When a taxing statute is being considered, ambiguities are resolved in favor of the taxpayer." Security Mills, Inc. v.Norwich, 145 Conn. 375, 377.
Therefore, as to Count 1 in both complaints, the court holds that the assessments on the 1989 Grand List were invalid and that the assessments should be the same as on the 1988 Grand List.
As to Count 2 which concerns the assessments on the Grand Lists of 1990, 1991 and 1992, the court holds that the plaintiff cannot prevail for the reasons set forth in AlbertBros., Inc. v. Waterbury, 195 Conn. 48. The court stated:
 "The second reason why the last sentence of § 12-118
does not require the granting of relief as to the subsequent tax lists is apparent from the purpose of that sentence as expressed in the legislative history accompanying its passage. The bill containing this sentence was similarly explained in both Houses of the General Assembly. "The purpose of the bill is to insure an equitable property tax for those whose assessments have been reduced by the court." 12 H.R. Proc., Pt. 2, 1967 Sess., p. 697 (statement of Rep. James P. McLoughlin); 12 S. Proc., Pt. 1, 1967 sess., pp. 367-68 (statement of Sen. William J. Erriker). It is apparent that the assessments here are not being "reduced" in the sense that it would be inequitable for the plaintiff to pay taxes on a reasonably determined validation of his property as contained in the 1981 and 1982 tax lists. The plaintiff abandoned at trial his claim that the valuations as adjusted by the board were in excess of the fair market value of his property. The last sentence of § 12-118 was directed not at the situation presented here, but was intended to address the problem created when the actions of the assessor and the board result in an inequitably high tax, and the inequitable tax is carried forward on subsequent tax lists. Cf. Farmers Grain Dealers Assn. of Iowa v. Woodward, 334 N.W.2d 295 (Iowa 1983). General Statutes § 12-118 states that on appeal from the actions of the board of tax review, "[t]he court shall have power to grant such relief as to justice and equity CT Page 5653 appertains. . . ." There being no claim that the assessments charged on the 1981 and 1982 tax lists were inequitably high, we find no reason to provide the relief requested in the amendment. Slosberg v. Norwich, 115 Conn. 578, 162 A. 772 (1932)."
The same principal as enunciated above is applicable in this case. The plaintiffs having withdrawn the counts alleging manifestly excessive valuation and no evidence of valuation having been presented, the plaintiffs are not entitled to any reduction in the valuation on the grand lists of 1990, 1991 or 1992 on the basis of an excessive valuation.
Accordingly, judgment may enter as follows:
Allan Schaefer, et al vs. City of Hartford.
On Count 1, the court sets aside the tax laid on the premises on the Grand List of October 1, 1989. The amount of tax due on the Grand List of 1989 shall be based upon the assessment of the premises on the Grand List of October 1, 1988. Defendant shall reimburse the plaintiff for any excess tax payments which have been made, calculated in accordance with the stipulation of the parties.
On Count 2, judgment may enter for the defendant.
Belmont Realty Company v. City of Hartford.
On Count 1, the court sets aside the tax laid on the premises on the Grand List of October 1, 1989. The amount of tax due on the Grand List of 1989 shall be based upon the assessment of the premises on the Grand List of October 1, 1988. Defendant shall reimburse the plaintiffs for any excess tax payments which have been made, calculated in accordance with the stipulation of the parties.
On Count 2, judgment may enter for the defendant.
Allen, State Trial Referee CT Page 5654