In re JAMES BLACK DRY GOODS COMPANY, appellee, v. BOARD OF REVIEW, CITY OF WATERLOO, appellant.

No. 52371.

(Reported in 151 N.W.2d 534)

June 6, 1967.

Rehearing Denied August 30, 1967.

Edward J. Gallagher, Jr., City Solicitor, and L. D. Lybbert, Assistant City Solicitor, of Waterloo, for appellant.

George R. Johnson, of Johnson & Eastlund, of Minneapolis, Minnesota, and Robert A. Young, Jr., for Beecher, Buckmaster, Beecher, Holmes & Lindeman, of Waterloo, for appellee.

Snell, J.—This is an appeal by the Board of Review for the City of Waterloo from the order and judgment of the district court reducing the assessed value of plaintiff-appellee's real property. The case involves the assessment made on Jan-

uary 1, 1963, and the assessment made on January 1, 1964. Both assessments were protested to the Board of Review and both were denied.

There is no dispute about the area, location, use, facilities or physical condition of the property.

We quote excerpts from appellant's statement of the facts with which appellee has indicated agreement:

' "The major portion of the property in question is known as Black's Department Store, Waterloo, Iowa, and is a full line department store of eight full stories, mezzanine and basement * * * and an addition that has three full stories and basement * * * which forms a part of the main building. The remainder of the downtown property consists of a three story and basement appliance annex * * * and a two story garage building * * *. The latter two buildings do not form a part of the main building, but are located adjacent thereto and to each other. Also included is a warehouse building located several blocks away * * *.

"The front ⅗ of the eight story department store building was constructed in 1913 and the rear ⅖ in 1929. The three story addition was constructed in 1956. The appliance annex and garage buildings were constructed in 1919, and 1922, respectively. The warehouse building was constructed in 1952. The entire department store building and addition is of the concrete-masonry-steel-wood type of construction and is classified as Grade A construction. It has been well maintained and in good repair with no structural defects. It has a central air conditioning and sprinkler system.

"* * *

"The location of the department store at the corner of East Fourth and Sycamore. Streets is considered by all to be the best part of downtown Waterloo. Its presence makes the best part of downtown and is its bright light. There isn't another store within 25 percent of its size and it is THE store in Waterloo without question. The general area has good active stores and Fourth Street is a very active business street. The corner is the 100 percent corner or highest value in Waterloo. Although it does not have parking space of its own, there is a new public

ramp within 1½ blocks. No large shopping centers have come into existence in Waterloo which would depress the downtown area as of the time of this appeal. The general economic condition of the Waterloo area was good. The land is being used for its most productive use. The property is unique, and there are no comparable properties in Waterloo.

"Prior to 1961, the property was owned by the Black family. For many years the Black family had leased all but the office portion of the property to the plaintiff-appellee which is known as the operating company. * * *

"Within one year prior to the sale in October 1961, the Black family was attempting to sell the property for $3,500,000. In October the Black family sold the property to Allied Stores, which is also the parent company of plaintiff-appellee which was operating the store, for the total sum of $1,665,000.

"After an extensive study and reevaluation of all real estate in Black Hawk County and the property in particular in preparation for the 1961 Quadrennial assessment the Clemenshaw Company appraised the actual value of the property to be $2,898,060. This appraisal was submitted to an advisory committee and the then City Assessor. The 1961 assessment was then made. In January, 1962, the assessor placed the property on the assessment rolls at the same valuation and again there was no protest. The assessor did likewise for the years 1963 and 1964 and the plaintiff-appellee did protest these assessments and appealed to the District Court from the denial of relief by the Review Board."

On May 17, 1963, plaintiff by petition to the Board of Review objected to the assessment made as of January 1, 1963, "based upon the erroneous Jan. 1, 1961 assessment", and that the property was assessed for more than the value authorized by law. The exhibit attached to the petition alleged the actual and completely arm's-length sale of the property and the establishment of the actual market value as of that date; that the land along with other land values in Waterloo has continued to decline in value since the 1961 real-estate assessment; that real property in Waterloo is not assessed at market value but rather at 45 percent thereof with 60 percent of such per-

centage of market value used as the assessed value for tax purposes.

The minutes of the Board of Review on May 24, 1963, show that after lengthy discussion the petition was denied "because this is an interim year and as per chapter [section] 441.35 of the Code of Iowa there has been no change in value."

On May 18, 1964, plaintiff by petition to the Board of Review objected to the assessment as of January 1, 1964, on substantially the same grounds as in the petition of May 17, 1963.

On May 25, 1964, the Board of Review denied the petition "on the grounds of no change of value."

Appeals to the district court followed.

Howard E. Shenehon of Minneapolis, a well qualified and experienced real-estate appraiser, testified at length for plaintiff. He defined market value "as that price which a well informed seller would be justified to sell his property to a well informed buyer who buys on the free market after the property had been duly exposed." He described in detail his study of the property involved and the tests used in appraising market value. He noted the age of the structures and functional obsolescence when compared to modern structures for display and sale of merchandise.

He thought actual value in the community was similar to what he determined was the market value. He found no comparable sales in Waterloo but made comparisons from other cities. He considered the sale of the subject property in September 1961 the best evidence and the controlling factor as to the value of the property. (The sale was made in September but the deed was dated October 6, 1961.) He placed the market value on September 15, 1961, January 1, 1963, and January 1, 1964, at $1,665,000. We find nothing in his testimony to support a finding that there was a change in value between January 1, 1961, and January 1, 1963, or January 1, 1965. The crux or nub of his testimony was that the 1961 assessment was too high.

On September 27, 1961, during the same month as the sale of the property, the purchasers mortgaged the property to The

Northwestern Mutual Life Insurance Company for two million dollars. This was explained as based on the credit rating of the borrower and not on the value of the property.

Mr. B. T. R. Brouillette, a vice-president of plaintiff's parent company, testified as to the company's operations and expressed an opinion that property values were dropping at least 2 percent a year "because of the growth of the suburban areas, shopping centers, free standing stores, spread of suburbia, and dropping of the tenancy downtown." He noted, however, that the development of suburban areas in the Waterloo area has not had a very marked effect on downtown merchandising as yet.

Mr. Roy Fisher, Jr. of Davenport, a well qualified and experienced real-estate appraiser, testified at length for plaintiff. He testified with respect to the various approaches to value and that the sale of the subject property was the best test of market value. He also noted that the store was the bright light in downtown Waterloo and is THE store without question. He said that there had been a considerable amount of money spent on it both before and after the property was purchased. He valued the property as of September 15, 1961, January 1, 1963, and January 1, 1964, at $1,665,000.

Mr. Robert C. Kenny of Waterloo employed by Iowa Securities Company in mortgage and loan business testified as to values based on capitalization of the annual rent.

The entire thrust of plaintiff's evidence was directed to the proposition that the property was assessed at more than its market value. We find no evidence as to any change in actual value subsequent to January 1, 1961.

Mr. Willard A. Stewart of Des Moines, regional director for J. M. Clemenshaw Company, whose business is real-estate appraisal, testified for defendant Board of Review. He was well qualified and experienced. He testified as to the several methods of approach in appraising real-estate and the method followed in Waterloo. He arrived at a valuation, in round numbers of $2,890,000.

Mr. Robert W. Dungan, well qualified and experienced and job manager for the Clemenshaw Company in the Waterloo ap-

praisal, testified for defendant. He testified as to the methods, figures and computations used. He arrived at a value of $2,898,060, the figure placed upon the cards filed with and used by the county assessor.

Mr. Earl F. Jago, Jr., assessor for the City of Waterloo since April 15, 1963, and deputy assessor prior thereto testified as to the records in his office.

The trial court analyzed the testimony and the three methods used in arriving at the actual value of real property, i.e., the cost approach, income or capitalization approach and comparable property approach. As to each method the court found the application would be inacceptable, inequitable or not applicable. The court found that the sale of the property in September 1961 established the value and that the Board of Review was in error in refusing to reduce the January 1, 1963, and January 1, 1964, assessed value. The court ordered the assessed value reduced from $782,460 to $449,550 based on an actual value of $1,665,000 and all taxes, if any, collected on any assessed value in excess of the valuations refunded to the taxpayer.

We disagree. Neither 1963 nor 1964 was a year for the regular assessment of real estate. The evidence does not support a finding of change in value contemplated by the statute.

I. Section 428.4, Code of Iowa, provides for quadrennial assessment of real estate and for annual assessment of new buildings and property not previously included. 1961 was a regular assessment year. 1963 and 1964 were interim years.

Section 441.21, Code of 1962, provides that all property subject to taxation shall be valued at its actual value. The method of computing assessed value after determination of actual value is not in issue here. The statute also says:

"In arriving at said actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property; and the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate or inequitable."

It should be noted that the value to be determined is actual value and that "market value, if any," is only one of the elements to be considered. Market value, of course, is an important consideration but it may be inflated above or deflated below actual value determined under the statute and it is not controlling. Des Moines Building-Loan & Savings Association v. Bomer, 240 Iowa 1192, 1197, 36 N.W.2d 366; In re Appeal of Bankers Life Co. v. Zirbel, 239 Iowa 275, 280 et seq., 31 N.W.2d 368. A change in market value would not necessarily establish a change in actual value.

II. Section 441.37, Code of 1962, provides:

"Protest of assessment—grounds. Any property owner or aggrieved taxpayer who is dissatisfied with his assessment may file a protest against such assessment with the board of review on or after May 1, to and including May 20, of the year of the assessment. Said protest shall be in writing and signed by the one protesting or by his duly authorized agent. * * *."

The grounds for protest are set forth in the statute.

In the case at bar the assessment was made in 1961. The first protest relative thereto was dated May 17, 1963. This protest attacked the 1963 assessment on the ground that the 1961 assessment was erroneous. The alleged error was in fixing a value in May 1961 (the Board of Review meets in May pursuant to section 441.33) as of January 1, 1961, in excess of the sale price in September following.

It is obvious under the wording of the statute that the protests based on the 1961 assessment were not timely.

III. As noted in Division I, supra, the statute places on a complainant the burden of proving the assessor's valuation excessive, inadequate or inequitable. The strong presumption of the correctness of the valuation previously recognized in Butler v. City of Des Moines, 219 Iowa 956, 258 N.W. 755, and Des Moines Building-Loan & Savings Association v. Bomer, supra, has now been removed by statute. Section 441.39 of the Code now provides that an appeal shall be heard in equity and determined de novo and that there shall be no presumption as to the correctness of the valuation. The burden of proof, however, remains on the complainant. The burden is heavy. Chicago

& North Western Railway Co. v. Iowa State Tax Commission, 257 Iowa 1359, 1379, 137 N.W.2d 246, 257.

IV. We have said, supra, that we find no change in actual value subsequent to January 1, 1961.

Section 441.33 of the Code provides for meetings of the Board of Review during May of each year.

As noted in Division II, supra, section 441.37 of the Code authorizes protests from May 1 to May 20 of the year of assessment.

Section 441.35, subsection 2, of the Code sets forth the powers of the Board and provides:

"In any year after the year in which an assessment has been made, all of the real estate in any taxing district, it shall be the duty of the board of review to meet as provided in section 441.33, and where it finds the same has changed in value, to revalue and reassess any part or all of the real estate contained in such taxing district, and in such case, it shall determine the actual value and compute the taxable value thereof, and any aggrieved taxpayer may petition for a revaluation of his property, but no reduction or increase shall be made for prior years. * * *."

The last paragraph of section 441.37, in addition to the part quoted in Division II, supra, provides:

"In addition to the above, the property owner may protest annually to the board of review under the provisions of section 441.35, but such protest shall be in the same manner and upon the same terms as heretofore prescribed in this section."

Plaintiff-appellee argues that this authorizes and requires. on the request of the taxpayer, a review and reassessment in interim years on the same grounds as in assessment years.

We do not so construe the statute. The words "same manner and upon the same terms" do not refer to the grounds of complaint. They refer to how and when an interim year protest shall be heard. The manner and terms for the protest are set forth in the first part of section 441.37 quoted in Division II, supra. The authorized ground for an interim year protest appears in section 441.35, quoted above. The only ground applicable to interim years is a change in value. During

an assessment year an individual taxpayer by following the provisions of section 441.37 may protest on any or all of the grounds set forth therein but in interim years the grounds for protest are limited by section 441.35.

Section 428.4 provides when real property shall be listed and valued.

Section 441.35 provides for the listing of omitted property.

Section 441.37 provides for protests during the year of assessment.

Section 441.35 provides for revaluation and reassessment in interim years where there has been a change in value.

We are not here concerned with the valuation and assessment of personal property done annually.

That part of section 441.35 with which we are here concerned appeared as section 7129.1, Code of 1939. Simmons Warehouse Company v. Board of Review, 229 Iowa 191, 294 N.W. 286, decided thereunder is factually comparable and in its language controlling here. We quote from pages 193 and 194:

"The obvious purpose of the legislature in enacting the above-quoted section was for the purpose of permitting a change in an assessment, 'In any year after the year in which the assessment has been made', but the legislature limited the change to a situation 'where it finds the same is changed in value'.

"It is the duty of the court to give effect to the language of the statute and the words, 'where it finds the same has changed in value', can only be construed as a limitation upon the enlarged jurisdiction of the Board of Review to make changes in assessments 'In any year after the year in which an assessment has been made'.

"* * *

"In accordance with Code section 7129.1, 1939 Code, a taxpayer after the year 1937 may petition for a change in the assessment, if, and only if, he is able to show that the value has changed since that year. It is a condition precedent to any inquiry that it be shown that the valuations have changed since the assessment year."

In Commercial Merchants National Bank and Trust Co. v. Board of Review, 229 Iowa 1081, 296 N.W. 203, this appears:

"Code section 7129.1 expressly provides that there can be no revaluation nor reassessment by the Board in any year subsequent to the year of assessment unless a change in the value of the particular property complained of since the year of assessment has been established. * * *." (Loc. cit. 1084)

The court found, however, that there was a substantial change in value.

A similar situation appears in Miller v. Board of Review, 230 Iowa 765, 298 N.W. 921. In that case the taxpayer had purchased the land for less than half the value used for assessment. The opinion refers to both Simmons and Commercial Bank cases and found a change in value. The reduction, however, was not to the amount of the purchase price.

In Des Moines Building-Loan & Savings Association v. Bomer, supra, the property was sold for $276,439 and as of the same date was valued for taxation at $394,260. A reduction in valuation based thereon was denied.

V. It appears clear from the cases decided under our taxation statutes that a sale price does not control the determination of actual value and that to support an interim year change there must be an affirmative showing of change in actual value.

In the case at bar we do not find such a showing.

The case is reversed and remanded for entry of judgment and decree in accordance herewith.—Reversed and remanded.

All JUSTICES concur.