488 N.W.2d 436 (1992)
MONTGOMERY WARD DEVELOPMENT CORP., By AD VALOREM TAX, INC., Its Authorized Agent, Appellant,
v.
CEDAR RAPIDS BOARD OF REVIEW, Appellee.
No. 91-637.
Supreme Court of Iowa.
Filed June 17, 1992.
*437 Elizabeth L. Gracie and Mark R. Davis, O'Keefe, Ashenden, Lyons & Ward, Chicago, Ill., and Jeffrey A. Trannel of Hughes & Trannel, P.C., Dubuque, for appellant.
James H. Flitz, City Attys. Office, Cedar Rapids, for appellee.
Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.
SNELL, Justice.
The appellant, Montgomery Ward Development Corporation, filed suit in district court for the purpose of seeking judicial review of an adverse Cedar Rapids Board of Review determination concerning allegations of excessive property tax assessments. Ward's claims, as amended, maintain that property tax assessments on its Cedar Rapids holdings for tax years 1989 and 1990 were "more than the value authorized by law" (count I), as well as discriminatory, inequitable, and thus violative of the state and federal constitutions (count II). The district court granted the board's motion for summary judgment as to all claims except count I as it pertained to tax year 1989 on the basis that Ward had failed to exhaust its administrative remedies. Upon receipt of the summary judgment order, Ward voluntarily dismissed the balance of count I and instituted the present appeal, which challenges both the summary judgment ruling and the order of dismissal. We now affirm the district court in all respects.

I. Background Facts.

On May 3, 1989, Ward filed a petition of protest with the Cedar Rapids Board of Review objecting to their property's 1989 assessed value. The protest was submitted on a form petition that is designed and distributed by the board. The form petition sets forth six potential grounds for protest, each of which correspond with the six grounds for protest enumerated in Iowa Code section 441.37(1) (1991). The petition directs the taxpayer to "strike out the ground or grounds that do not apply." In addition, each of the six enumerated grounds are followed by at least two blank lines, which call for the petitioner to describe the particulars of their protest.
Ward did not strike out any ground from the petition. The only ground for which Ward supplied details relating to its particular protest was the second listed ground, which corresponds with the basis for protest described in Iowa Code section 441.37(1)(b). That section permits a taxpayer protest on the basis that the "property is assessed for more than the value authorized by law." On May 31, 1989, the board responded to Ward's protest as follows: "After careful consideration of the protest and information submitted, the board has found no basis for a change in the 1989 assessed value of $4,707,794 (commercial)."
Ward then appealed the board's denial to the district court pursuant to Iowa Code section 441.38. Ward's initial petition alleged only that the subject property was "assessed for more than the value authorized by law," which, like the protest lodged with the board, corresponds to the basis for protest detailed in Iowa Code section 441.37(1)(b).
*438 In August 1990 the Iowa Department of Revenue and Finance published an assessment-sales ratio study for 1989. A ratio study is designed to evaluate assessment performance through a comparison of assessed values made for tax purposes with independent estimates of market value based either on sales prices or independent appraisals. In response to this information, Ward filed a motion for leave to amend its petition pending before the district court. The motion sought to add allegations that the subject property had been assessed for more than the value authorized by law for 1990. Also, it alleged that the assessments for both 1989 and 1990 were discriminatory, inequitable, and thus violative of the equal protection clause of the United States Constitution, the uniformity and equal protection clauses of the Iowa Constitution and subparagraph (a) of Iowa Code section 441.37(1) (count II). The district court sustained Ward's motion to amend.
On December 19, 1991, the board filed a motion for partial summary judgment, claiming that the district court lacked jurisdiction to hear count II altogether and count I as it relates to the 1990 tax year. The district court granted the board's motion in all respects on the basis that Ward had failed to exhaust its administrative remedies as required by Iowa Code section 441.38 prior to seeking judicial review. The court's ruling left only count I as it relates to the 1989 assessment year to be decided in the trial court.
It did not take an interlocutory appeal from this partial summary judgment ruling; instead, it unsuccessfully sought to postpone the trial and to have the district court reconsider its decision. Finally, on the morning of trial, Ward voluntarily moved to dismiss the sole remaining cause of action, count I as it pertains to the 1989 assessment year. The district court granted Ward's motion to dismiss. Ward now appeals and is seeking reversal of both the partial summary judgment and the order granting the voluntary dismissal of the balance of count I.

II. Disposition of the 1990 Claims.

Pursuant to our biennial system of real estate tax assessment, the year 1989 would have been an "assessment year" and 1990 an interim year. Iowa Code § 428.4. In an interim year, assessments of real estate are made only to the extent that the property was incorrectly valued in the assessment year, not listed in the assessment year, or experiences a change in value as of the assessment year. Id.
To the extent a taxpayer is dissatisfied with the assessor's valuation, the aggrieved taxpayer may lodge a protest with the appropriate board of review. Iowa Code § 441.37. To this end, Iowa Code section 441.37 establishes six grounds on which a property tax assessment may be contested by the taxpayer. These six grounds correspond with the bases for protest enumerated on the petition for protest distributed by the board.
Significantly, Iowa Code section 441.37 limits protests on the basis of the first five grounds to petitions filed with the board of review "on or after April 16, to and including May 5, of the year of assessment." Iowa Code § 441.37(1) (emphasis added). With regard to the sixth basis for protest, the Code states as follows:
In addition to the [first five grounds for protest], the property owner may protest annually to the board of review under the provisions of section 441.35, but such protest shall be in the same manner and upon the same terms as heretofore prescribed in this section.
Iowa Code § 441.37(1) (emphasis added). Iowa Code section 441.35 further elaborates upon an interim year protest as follows:
In any year after the year in which an assessment has been made of all the real estate in any taxing district, it shall be the duty of the board of review to meet as provided in section 441.33, and where it finds the same has changed in value, to revalue and reassess any part or all of the real estate contained in such taxing district, and in such a case it shall determine the actual value as of January 1, of the year of revaluation and reassessment *439 and compute the taxable value thereof, and any aggrieved taxpayer may petition for a re-evaluation of the taxpayer's property, but no reduction or increase shall be made for prior years.
(Emphasis added.)
Upon receipt of a final determination by the board of review, taxpayers are then entitled to seek judicial review of board actions pursuant to Iowa Code section 441.38. However, "[n]o new grounds in addition to those set out in the protest to the board of review as provided in section 441.37 can be pleaded, but additional evidence to sustain those grounds may be introduced." Iowa Code § 441.38.
We have consistently held that under the statutory scheme outlined above, protests first initiated in an interim year are limited to a showing of change in property value as of the immediately preceding assessment year. Equitable Life Ins. Co. v. Board of Review, 252 N.W.2d 449, 450 (Iowa 1977); Grundon Holding v. Board of Review, 237 N.W.2d 755, 758 (Iowa 1976); James Black Dry Goods Co. v. Board of Review, 260 Iowa 1269, 151 N.W.2d 534, 538-40 (1967); Simmons Warehouse Co. v. Board of Review, 229 Iowa 191, 194, 294 N.W. 286, 288 (1940). Ward contends that because the statutory scheme precludes initiation of a protest in an interim year based on any ground except change in value as of the preceding assessment year, its 1989 (assessment year) protest must necessarily be deemed to effect a protest with respect to the 1990 interim year as well. To conclude otherwise, Ward argues, would result in the assessment of a property tax without "an opportunity to be heard upon the question of the validity of the tax" assessed in an interim year. Security Trust & Safety Vault Co. v. City of Lexington, 203 U.S. 323, 335, 27 S.Ct. 87, 90, 51 L.Ed. 204, 208-09 (1906) (concluding that due process dictates that taxpayers receive notice and an opportunity to be heard concerning the validity of a property tax assessment before the tax can be enforced). Accordingly, Ward maintains that the district court erroneously granted the board's motion for partial summary judgment as to interim year 1990 on the basis that Ward had failed to register a 1990 interim year protest with the board of review.
Our review of appeals taken from the action of the board of review are normally heard in equity wherein we review the record de novo. Iowa Code § 441.39. "However, even in an equity case we cannot find facts de novo in an appeal from summary judgment." Moser v. Thorp Sales Corp., 312 N.W.2d 881, 886 (Iowa 1981) (citing Lyon v. Willie, 288 N.W.2d 884, 894 (Iowa 1980)). "Therefore, on the issues adjudicated by the trial court in its partial summary judgment ... we review for correction of errors at law." Id. (citing Iowa R.App.P. 4). In essence, Ward's contention calls upon us to make a legal determination regarding whether the statutory protest scheme comports with the dictates of procedural due process.
As detailed above, the statutory scheme clearly provides for an assessment year protest on any of the five grounds described in Iowa Code section 441.37. Moreover, protests first initiated during an interim year must be confined to an assertion that the real estate in question has changed in value as of the preceding assessment year. Equitable Life Ins. Co., 252 N.W.2d at 450; Grundon, 237 N.W.2d at 758; James Black Dry Goods, 151 N.W.2d at 538-40; Simmons Warehouse, 229 Iowa at 194, 294 N.W. at 288. This is not to say, however, that a taxpayer is left without recourse to challenge an interim year valuation on other grounds. On the contrary, in Farmers Grain Dealers Association v. Woodward, 334 N.W.2d 295 (Iowa 1983), we clearly established the procedure by which a taxpayer may challenge interim year assessments. Any interim year protest, other than one grounded upon a change in value as of the preceding assessment year, must begin with a prior protest brought before the board in the year of assessment as provided in Iowa Code section 441.37. Farmers Grain, 334 N.W.2d at 299-300. Having done so, the taxpayer is then entitled to sustain the protest and the grounds therefore in an *440 interim year protest before the board of review. Id. In Farmers Grain, we concluded that this requirement of interim year renewal of protests first lodged before the board in the year of assessment rests upon the need for local governments "to know which years are in contest and which are not [so as to plan and provide] for expenditures and possible refunds." Id. at 300.
This system, although somewhat intricate, does provide a means by which taxpayers can challenge real estate valuations in both assessment years and interim years on all the available grounds. However, prior to contesting an interim year assessment (other than on the basis of a change in value), the taxpayer must (1) lodge a protest that details the grounds therefore with the board of review in the year of assessment and (2) renew that same protest before the board in the interim year in question.
As to count I as it pertains to tax year 1990, Ward failed to file an interim year 1990 protest with the board. As a consequence, the district court properly granted the board's partial summary judgment motion insofar as Ward did not properly exhaust its administrative remedies for the year 1990. Farmers Grain, 334 N.W.2d at 299-300. As to count II as it pertains to tax year 1990, Ward's errors were twofold. Not only was there a failure to file a 1990 interim year protest on the grounds alleged in count II, but, as will be discussed in subdivision III below, Ward did not even plead the grounds detailed in count II in their 1989 board protest and, therefore, would have been precluded from lodging such a protest with the board in the interim year 1990 had they attempted to do so. Id. at 299 (prohibiting interim year protests on the first five grounds listed in section 441.37(1) unless first raised in an assessment year). Accordingly, we concur with the district court's determination that the board was entitled to summary judgment with respect to all Ward's claims involving the interim year, 1990.
III. Ward's Claims of Discrimination and Inequitability in Property Value Assessment.
Ward next contends that the allegations embodied in count II of its petition in the district court were adequately invoked in their 1989 protest filed with the board. Despite the numerous arguments put forth by Ward on this point, we conclude that the grounds for protest detailed in count II were not properly pleaded in the 1989 protest and, therefore, Ward is precluded from seeking judicial review of their 1989 real estate assessment on these bases. Iowa Code § 441.38(1) ("In appeals to the district court, no new grounds in addition to those set out in the protest to the board of review as provided in section 441.37 can be pleaded...."). As was the case in subdivision II, our standard of review on this partial summary judgment ruling is for errors at law. Moser, 312 N.W.2d at 886.
A. As noted earlier, the petition that Ward filed with the board in 1989 submitted the requisite details for only one basis for protest: that the property in question was assessed for more than the value authorized by law and that the amount of the overassessment was $1,207,794. Ward now argues that this is sufficient to register the constitutional components of their discriminatory assessment claim with the board. We disagree.
A claim of discriminatory assessment in violation of the state and federal constitutions is sufficiently similar to a claim of inequitable assessment so as to require that it be invoked by supplying the necessary information under ground one on the board's petition, which corresponds to subparagraph (a) in section 441.37(1). See Chicago & Northwestern Ry. v. Iowa State Tax Comm'n, 257 Iowa 1359, 137 N.W.2d 246, 253-54 (1965) (noting that a claim of unconstitutional discrimination in property tax assessment also justifies a reduction of assessment under the predecessor of section 441.37(1)(a)). Subparagraph (a) of section 441.37(1) permits protests on the ground that "the assessment is not equitable as compared with assessments of other like property in the taxing *441 district." In all pertinent respects, this parallels the standard articulated by the United States Supreme Court for evaluating whether property tax assessments are violative of the equal protection clause. Allegheny Pittsburgh Coal Co. v. County Comm'n, 488 U.S. 336, 345, 109 S.Ct. 633, 639, 102 L.Ed.2d 688, 698 (1989) ("[I]ntentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property."). In contrast, the ground invoked by Ward corresponds to subparagraph (b) of 441.37(1), which proscribes assessments that exceed the property's "fair and reasonable market value" as that term is defined in Iowa Code section 441.21. Security Mut. Ins. Ass'n v. Board of Review, 467 N.W.2d 301, 304 n. 1 (Iowa App.1991). Thus, Ward's contention that the constitutional component of their discriminatory assessment claim was adequately raised in the 1989 petition filed with the board must be rejected.
B. Ward next maintains that ground one of the board's form petition, which corresponds with the basis for protest detailed in section 441.37(1)(a), was invoked simply because Ward did not strike out this ground as is requested on the board's form petition. Again, we must disagree.
Iowa Code section 441.37(1)(a) clearly provides that when the petitioner intends to rely on the ground of inequitability of assessment within a taxing district, "the legal description and assessments of a representative number of comparable properties, as described by the aggrieved taxpayer, shall be listed on the protest, otherwise said protest shall not be considered on this ground." Iowa Code § 441.37(1)(a) (emphasis added). In recognition of this statutory directive, the board's form petition directs applicants to "[g]ive legal description and assessment of a representative number of comparable propertiesnot less than five if real estate is involved." The statutory requirement is both a jurisdictional prerequisite and an evidentiary requirement for bringing a claim of inequitable or discriminatory assessment before the board. The board's statement on its form petition that applicants should "[s]trike out the ground or grounds that do not apply" does not derogate from this requirement inasmuch as subject matter jurisdiction cannot be created by consent. Lloyd v. State, 251 N.W.2d 551, 556 (Iowa 1977).
Since Ward failed to list the requisite "comparable properties," count II was not properly set out in the protest and thus may not be considered on appeal. Iowa Code § 441.38(1).
C. In a related argument, Ward contends that the word "shall" in Iowa Code section 441.37(1)(a) is merely directory and not mandatory. As such, it asserts that the failure to list "a representative number of comparable properties" is not fatal to lodging a successful protest with the board on the grounds detailed in count II.
"Generally, the word `shall,' when used in a statute, is construed to mean something that is mandatory." State v. Bartusek, 383 N.W.2d 582, 584 (Iowa 1986); Iowa Code § 4.1(36)(a). However, we have held that where the prescribed duty is not essential to the main objective or purpose of the legislation in question, the statute ordinarily is directory and a violation thereof will not invalidate subsequent proceedings unless prejudice is shown. In re A.E.O., 437 N.W.2d 238, 239 (Iowa 1989); Pearson v. Robinson, 318 N.W.2d 188, 191 (Iowa 1982).
Nevertheless, in the case at hand, we conclude that a listing of comparable properties is "essential to the main objective of the statute." The failure to list the required properties directly frustrates the sole function of the requirement, which is to enable the board to make a preliminary determination on the matter of equitability of assessment. The term "shall," therefore, must be interpreted to create a mandatory duty.
Ward properly notes that we have stated that "only substantial compliance with requirements of section 441.38 is necessary to confer jurisdiction upon the district court." Cowles Communications, Inc. v. Board of Review, 266 N.W.2d 626, 631 *442 (Iowa 1978); Maxwell v. Shivers, 257 Iowa 575, 581, 133 N.W.2d 709, 712 (1965) (considering a claim of inequitability although only one "comparable property" was listed on the board's form petition). However, we find absolutely no evidence that Ward gave the board an opportunity to consider the grounds detailed in count II in their written petition or otherwise. Thus, far from substantially complying with the requirements of section 441.38, Ward is merely attempting to circumvent the requirement that taxpayers first exhaust their remedies with the administrative tribunal before seeking judicial review.
D. In its final argument in support of their assertion that the grounds embodied in count II were properly invoked in the 1989 protest, Ward contends that the board was obligated, under section 441.37(3), to inform them of any defects in their protest. Section 441.37(3) does require that the board file a final disposition of the protest in which it specifies the reasons for the action taken. However, this obligation does not require that the board be clairvoyant. Given that Ward in no way indicated that it was relying upon the ground for protest detailed in section 441.37(1)(a), the board was obviously under no duty to inform Ward that this particular ground had not been invoked in its protest.
IV. Exclusivity of the Chapter 441 Statutory Scheme.
Ward next maintains that even if count II was not properly raised in the petition filed with the board, Ward was entitled to seek recourse from the courts without first exhausting their administrative remedies because count II involves allegations of constitutional dimensions that is, an alleged denial of equal protection and an alleged violation of the uniformity clause. Our review is for errors at law. Iowa R.App.P. 4.
We have granted taxpayers a direct right of review for claims involving
the systematic and intentional valuation of a particular kind of property at a higher percentage of its actual value than that at which other kinds of property are valued, or the systematic and intentional assessment of taxes on a particular kind of property at a higher rate than that imposed on property of the same kind.
Hanselman v. Humboldt County, 173 N.W.2d 75, 78 (Iowa 1969); accord Appanoose County Rural Taxpayers Ass'n v. Iowa State Tax Comm'n, 261 Iowa 1191, 158 N.W.2d 176, 180 (1968). However, in neither case did the taxpayer in question have the right to seek further administrative review of the disputed agency action. Hanselman, 173 N.W.2d at 79 ("It is clear no administrative remedy was available to appellants; they were faced with a factual situation not foreseen or contemplated by sections 441.37 and 441.38...."); Appanoose, 158 N.W.2d at 182 ("It is clear there is no statutory appeal from the state board of review's action....").
In contrast, where the administrative review scheme embodied in chapter 441 of the Code is applicable, the review process detailed therein is the exclusive means by which a taxpayer may contest an assessment. Farmers Grain, 334 N.W.2d at 299 ("[the] process is an exclusive one"). When faced with this same argument, a California court of appeals concluded as follows:
The proposition that an ad valorem tax may be discriminatory in application or may otherwise deny equal protection of the law as applied does not excuse the taxpayer from pursuing his administrative remedy to correct the inequality where there is a remedy available to do so. "If any question of valuation exists, it would be irrelevant [to the issue of exhaustion of administrative remedy] that plaintiff also challenges the assessment as `arbitrary' or void on constitutional grounds. If prior recourse to the board [of equalization] on the question of valuation might have avoided the necessity of deciding the constitutional issue, or modified its nature, the plaintiff's action was properly dismissed."
Westinghouse Elec. Corp. v. County of Los Angeles, 42 Cal.App.3d 32, 116 Cal. Rptr. 742, 748 (1974) (citations omitted) (alterations *443 in original). Similarly, we conclude that where, as here, the taxpayer had recourse to an administrative review board, that avenue must be fully pursued prior to seeking judicial review even on constitutional grounds. The failure to do so precludes judicial review of a property tax assessment on any basis, constitutional or otherwise.
V. Ward's Voluntary Dismissal of Their 1989 Claim, Count I as it Relates to Tax year 1989.
After the district court granted the board's partial summary judgment motion for all of count II and count I as it pertains to tax year 1990, Ward sought leave to voluntarily dismiss the balance of count I pursuant to Iowa Rule of Civil Procedure 215. Ward's professed rationale for this rather unorthodox move was to facilitate immediate appellate review of the summary judgment order and thereby avoid having to try the case in an uneconomical, piecemeal fashion should the appeal of the summary judgment order be favorable. It should be noted that Ward did not seek interlocutory appeal of the partial summary judgment order. Since the statute of limitations on filing an appeal from an unfavorable board of review decision has run, see Iowa Code § 441.38, Ward now seeks a reversal of the dismissal order that was granted at their behest. Ward contends that the dismissal was neither "voluntary" nor "without prejudice," and, therefore, they are entitled to a reversal of the dismissal order. Our review is for errors at law. Iowa R.App.P. 4.
We conclude that the grant of dismissal is more properly characterized as being without prejudice even though Ward may as a practical matter be foreclosed from reinstating a protest for the 1989 tax year as a consequence of the applicable statute of limitations. Iowa Code § 441.38 (requiring that appeals be taken within twenty days of the board's adjournment, which was May 31, 1989). Iowa Rule of Civil Procedure 215 specifies that "dismissal under this rule shall be without prejudice, unless otherwise stated." Iowa Rule of Civil Procedure 215. The district court's order of dismissal did not specify whether the dismissal was without prejudice, and, therefore, we presume, consistent with rule 215, that the dismissal was without prejudice.
In any event, our jurisdiction over this issue terminated as of the time the dismissal order issued, and, consequently, Ward has no basis on which to prosecute an appeal regarding the voluntary dismissal of count I as it pertains to tax year 1989. Witt Mechanical Contractors, Inc. v. United Bhd. of Carpenters & Joiners, 237 N.W.2d 450, 451 (Iowa 1976) (effect of a dismissal under rule 215 "is final and terminates the jurisdiction of the court thereof"); State ex rel. Turner v. Midwest Dev. Corp., 210 N.W.2d 525, 526 (Iowa 1973) (after voluntary dismissal, case is "nonexistent" and dismissal of appeal is required); Mollring v. Mollring, 184 Iowa 464, 465-66, 167 N.W. 524, 525 (1918) (same). On this basis alone, the matter must necessarily be deemed "unreviewable."
However, in addition to the "unreviewability" of Ward's voluntary dismissal order, we note that Ward's right to appeal from a final judgment to which it has consented is not unrestricted. In Hense v. G.D. Searle & Co., 452 N.W.2d 440 (Iowa 1990), we held that when a litigant invites an adverse final judgment and the invitation is "truly voluntary" in the sense that no prior court rulings "can fairly be said to have precluded [the litigant] from recovering" on their suit, the final judgment is not subject to appeal. Id. at 444-45. Although the voluntary dismissal order is not a final judgment, the rationale we embraced in Searle is, nevertheless, persuasive. Thus, since the motivating impulse behind Ward's dismissal was simple economics and not prior rulings that effectively precluded recovery, we conclude that the invited dismissal was "truly voluntary," and, therefore, Ward is also precluded from challenging the order of dismissal under the Searle doctrine.

VI. Disposition.

Ward failed to exhaust its administrative remedies with respect to count I as *444 it pertains to tax year 1990 and count II for tax years 1989 and 1990. As a consequence, section 441.38 prohibits consideration by the courts of any protest on these grounds. In addition, we are precluded from reviewing the district court's order of dismissal for at least two reasons: (1) grants of voluntary dismissal pursuant to rule 215 are inherently unreviewable, and (2) Ward's consent to the dismissal was "voluntarily" given as that term is defined in Searle. Accordingly, the district court's orders of summary judgment and dismissal are affirmed.
AFFIRMED.