# IN THE COURT OF APPEALS OF IOWA

No. 18-1129
Filed July 24, 2019

**MAU FAMILY LIMITED PARTNERSHIP,**
    Plaintiff-Appellant,

**vs.**

**PROPERTY ASSESSMENT APPEAL BOARD,**
    Defendant-Appellee,

**and**

**DICKINSON COUNTY BOARD OF REVIEW,**
    Intervenor.
_____

Appeal from the Iowa District Court for Dickinson County, David A. Lester,
Judge.

A property owner appeals the district court's order affirming the board's
valuation of several properties.  **AFFIRMED.**

David J. Stein, Jr. of Stein Law Office, Milford, for appellant.

Jessica Braunschweig-Norris and Bradley O. Hopkins, Des Moines, for
appellee.

Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

"Arguably the best location in the Okoboji Lakes area for a restaurant and marina." The appraiser's glowing description of lakefront property at the confluence of East Lake and West Lake Okoboji contributed to Dickinson County's valuation of the property at nearly $2.2 million. The owner—Mau Family Limited Partnership (Mau)—argued its property was only worth $1.7 million. On appeal, Mau alleges the Property Assessment Appeal Board (PAAB) used faulty methods for reaching its valuation and overlooked an equity argument. Like the district court, we see no error in PAAB's process of determining the property's worth and find substantial evidence supports the higher tax valuation. Thus, we affirm.

## I.    Facts and Prior Proceedings

Mau owns and operates businesses on four contiguous parcels comprising 1.45 acres of commercial land with 256 feet of shoreline on East Lake Okoboji. The parcels border Highway 71 on the west, city roads on the north and east, and East Lake Okoboji on the south. They lie adjacent to a small isthmus at the junction of East Lake and West Lake Okoboji. Improvements on the land include a restaurant, a warehouse and boat storage, and a parking lot. At the time of the assessment, the restaurant was undergoing substantial renovations. An assessor for Dickinson County opined the lakefront parcels are in a prime location, arguably the best commercial location in the Iowa Great Lakes region, with high visibility and traffic along the main thoroughfare in the area.

In 2015, the Dickinson County assessor valued the property at $2,194,000 and assessed taxes accordingly. Mau challenged the valuations, submitting its own appraisals valuing the property at $1.7 million.

The following table shows the competing valuations:

| Parcel Number | Address | Land Use | County Assessor | | | Mau Appraiser |
| | | | Land Value | Building Value | Total Value | Contention of Total Value |
|---|---|---|---|---|---|---|
| 07-20-304-001 | 1304 Highway 71 S | Parking lot | $120,500 | $10,500 | $131,000 | $101,500 |
| 07-20-304-005 | 1509 Gordon Dr. | Vacant/ garage | $472,700 | $2,800 | $475,500 | $368,400 |
| 07-20-304-006 | 1507 Gordon Dr. | Marina and Warehouse | $334,400 | $356,800 | $691,200 | $535,600 |
| 07-20-304-007 | 1404 Highway 71 S | Restaurant | $772,500 | $123,800 | $896,300 | $694,500 |
| | | **Totals:** | $1,700,100 | $493,900 | $2,194,000 | $1,700,000 |

Mau unsuccessfully challenged the assessment before the Dickinson County Board of Review and PAAB. Mau asked for rehearing, which PAAB denied. Mau then sought judicial review, where the burden is on the taxpayer as "the party asserting the invalidity of the agency action." *See Wendling Quarries, Inc. v. Prop. Assessment Appeal Bd.*, 865 N.W.2d 635, 638 (Iowa Ct. App. 2015). The district court affirmed PAAB's ruling. Mau now appeals.

## II. Scope and Standards of Review

We review PAAB's ruling for correction of errors at law. Iowa Code § 441.39 (2017). In reviewing the district court's decision affirming the agency, "we apply the standards of chapter 17A to determine if we reach the same conclusion as the district court." *Wendling Quarries*, 865 N.W.2d at 638. We are bound by PAAB's findings of fact if such findings are supported by substantial evidence. *Id.* Substantial evidence supports an agency's decision even if the interpretation of the evidence may be open to a fair difference of opinion. *Arndt v. City of Le Claire*,

728 N.W.2d 389, 393 (Iowa 2007). We do not presume the assessment is correct. Iowa Code § 441.37A(3)(a).

## III.  Analysis

Mau alleges the district court erred in four ways:[1] (1) by using PAAB's valuation that considered the highest and best use of the land rather than its actual use; (2) in affirming PAAB's use of an abnormal transaction in its valuation; (3) by affirming PAAB's rejection of Mau's appraisals because they were not valued as separate parcels; and (4) in finding PAAB's valuation was supported by substantial evidence.

### A.  Highest and Best Use

Mau first challenges the PAAB's method for valuing the property. Mau insists the county appraiser improperly relied on the "highest and best use." In support, Mau points to current law requiring the assessor to "classify property according to its present use and not according to its highest and best use." *See* Iowa Admin. Code r. 701-71.1(1).

Mau further complains the assessor improperly used residential property values rather than commercial property values and West Lake rather than East

---

[1] In addition to these claims, Mau contends it argued to PAAB that the valuation was inequitable, but PAAB and the district court mistakenly found that issue was waived because Mau did not present it to the county board of review. Mau argues because the county did not object to the inequity evidence at trial, the matter was tried by consent. Generally, "[n]o new grounds in addition to those set out in the protest to the local board of review . . . can be pleaded" before PAAB. Iowa Code § 441.37A(1)(b) (2015). Because Mau did not present "the legal description and assessments of a representative number of comparable properties" in its protest to the county as required by Iowa Code section 441.37(1)(a)(1)(a), Mau did not properly raise the equity argument. *See Montgomery Ward Dev. Corp. v. Cedar Rapids Bd. of Review*, 488 N.W.2d 436, 441 (Iowa 1992) ("[S]ubject matter jurisdiction cannot be created by consent."), *overruled on other grounds by Transform, Ltd. v. Assessor of Polk Cty.*, 543 N.W.2d 614, 615 (Iowa 1996). Therefore neither PAAB nor the district court could address that new ground.

Lake property values. East Lake values are more appropriate, according to Mau, because the property borders East Lake.

In evaluating Mau's complaints, we start with the basics of property taxation. Before PAAB, the taxpayer bears the burden to show the assessment is excessive by a preponderance of the evidence. Iowa Code § 441.21(3)(b); *Compiano v. Polk Cty. Bd. of Review*, 771 N.W.2d 392, 396 (Iowa 2009).[2] For taxation, property is assessed at its "actual value," meaning "the fair and reasonable market value." Iowa Code § 441.21(1)(a), (b). Taxes are levied according to the value assessed. *Id.* § 441.21(1)(a). "Market value" means "the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller." *Id.* § 441.20(1)(b)(1). The "[s]ale prices of the property or comparable property . . . shall be taken into consideration in arriving at its market value." *Id.* If assessors cannot readily establish the value of the property by this method, they "may determine the value of the property using the other uniform and recognized appraisal methods including its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and

---

[2] For assessment years before 2018, the taxpayer must offer competent evidence from at least two disinterested witnesses showing the market value of the property is less than the market value determined by the assessor. Iowa Code § 441.21(3)(b). Then the burden shifts to the county to uphold the valuation. *Id.* Not only must the taxpayer show the valuation is excessive, the taxpayer must show the correct valuation. *Id.* § 441.37(1)(a)(1)(b). PAAB found because Mau offered evidence from only one witness, it did not successfully shift the burden to the county. Mau still had to show the assessed values were excessive and the correct valuation. Mau does not contest the finding it failed to shift the burden of proof. The burden remained on Mau to show the over-assessment and the correct values.

replacement cost, and all other factors which would assist" in determining fair market value.[3]  *Id.* § 441.21(2).

One appraisal method begins with the property's highest and best use, then reduces the value based on adjustments necessary to account for its actual use. *See Maytag Co. v. Partridge*, 210 N.W.2d 584, 589 (Iowa 1973).  This approach is consistent with the rule 701-71.1(1) directive to assess "actual use" because the assessor does not classify the property based only on its best use.  Instead, the assessor may use the best-use value as a starting point before accounting for actual use.

To show an over-assessment before PAAB, Mau offered two appraisals by NAI LeGrand & Company (NAI) property appraiser James Verschoor.  The first report appraised parcel 007[4] (including a restaurant) and part of parcel 001 (including a parking lot).[5]  Verschoor noted those parcels featured 37,000 square feet of land, 110 feet of its border lakefront with "[e]xcellent visibility and good access."  He recognized renovations to the restaurant would result in a 3200-square-foot building to be completed May 2015.  Other improvements included a large exterior wooden deck for dining and a boardwalk or patio along the lakefront. Verschoor estimated the value of the land based on its use as a restaurant.

---

[3] The approved approaches to valuation include the "cost approach," "sales comparison approach," and "income approach."  Iowa Dep't of Revenue, Iowa Real Property Appraisal Manual 1–2 (2008), https://tax.iowa.gov/sites/files/idr/documents/1introductionsection.pdf (last visited July 19, 2019).

[4] We reference each parcel by the last three digits of its parcel number.

[5] The NAI appraisals contain the following disclaimers: "The intended use of the appraisal is to aid the [c]lient in evaluating the subject property for lending purposes.  The appraisal is not intended for any other use."

Without the improvements, he estimated the market value would be $800,000—increasing to $975,000 upon completion of the building renovation.

The second appraisal examined parcels 005 and 006 along with the remaining section of parcel 001. This area included a 7300-square-foot boat maintenance and storage building. Verschoor noted 29,000 square feet of land with 136 feet of lakefront and above-average visibility and access. He believed the highest and best use of the land would be residential condominiums or commercial development. He estimated the fair market value, $900,000, based on use of the land as a "[v]acant development site." His application of the land's highest and best use contravened *Maytag*, as Verschoor did not go on to adjust the value of the land for its current use.[6] *See* 210 N.W.2d at 589–90.

In both his assessments, Verschoor used a sales-comparison approach. As comparison properties, he identified one commercial parcel on West Lake and several residential parcels farther north on East Lake. In his first assessment, Verschoor also used an "income-capitalization" approach. His ultimate estimate fell between the two results.

The county offered appraisals by Bob Ehler and Ted Goslinga of Vanguard Appraisals. Their appraisals included estimates for the value of the land in each parcel and a separate estimated value of the buildings and other improvements on each parcel. They reported, "Due to the lack of commercial lakeshore land sales, residential land sales were also analyzed for the purposes of determining the

---

[6] Verschoor's appraisal did reduce the value of the land by $50,000 from its highest and best use. But that reduction reflected the cost of demolishing the boat house, not the boat house's actual value.

subject properties land value." This analysis included comparable front-foot pricing for lakeshore properties.

Both sets of appraisers recognized the prime location of Mau's property. The county's experts hailed the site as "arguably the best location in the Okoboji Lakes area for a restaurant and marina with high visibility and the highest traffic count in Dickinson County." Mau's appraiser likewise noted the land is adjacent to the only waterway allowing passage between West Lake and East Lake.

Both sets of appraisers also realized property values for West Lake parcels are generally higher than the values on East Lake. Goslinga additionally commented, "Based on all available market date, we concluded that the front foot land rate for properties with Lake Frontage and in the general proximity . . . should be at a rate of $12,000 per front foot." He reached that conclusion by starting with the highest and best use for the land. The assessors concluded "the commercial properties with Lake Frontage were not being utilized at their highest and best use" as residential developments. To adjust for commercial use, the assessors reduced the front foot rate by half—to $6000 per front foot. This "under-development adjustment" is consistent with the reasoning in *Maytag*. *See* 210 N.W.2d at 589–90.

In its decision, PAAB refused to consider Mau's two appraisals because they valued only the site and not the improvements and because they did not offer separate appraisals of the four individual parcels. PAAB concluded Mau's evidence did not reflect the correct value. Thus, PAAB rejected Mau's challenge: "We find the record lacks any fair market valuations for the individual subject parcels, which must be established. For this reason, Mau . . . failed to support its

claim that its property is over assessed." The district court agreed Mau did not offer competent evidence to supports its claim.

Addressing Mau's first assignment of error, we find substantial evidence showing the county did not rely on the highest-and-best-use standard alone to arrive at its assessment. The Vanguard appraisers specifically noted the parcels would not be used as residential developments and adjusted their estimates accordingly. We also find substantial evidence supports PAAB's acceptance of the assessment despite the appraisers' use of both residential and commercial sales comparisons. The Vanguard appraisers noted a lack of comparable commercial sales. And section 441.21(2) authorizes the use of residential sales when comparable commercial sales are not available.

Finally, substantial evidence supports the propriety of using West Lake valuations to assess the Mau property. Although its front footage is on East Lake, the property is uniquely situated at the confluence of both lakes and Highway 71. The assessors noted the highest vehicle traffic in the county runs by the property. They also highlighted the excellent visibility and good access. The property is adjacent to the only waterway between West Lake and East Lake.

None of Mau's complaints about methodology undermine the district court's conclusions. The assessor did not improperly rest its valuation solely on the highest-and-best-use standard.

**B. Abnormal Transaction**

Mau next complains PAAB impermissibly considered Mau's "abnormal" purchase of adjoining land in 2010 when accepting the county's valuation. When Mau bought parcels 005 and 007 for $1,475,000 in November 2010, it paid a

"premium" for the contiguous land. "In arriving at market value, sale prices of property in abnormal transactions not reflecting market value shall not be taken into account, or shall be adjusted to eliminate the effect of factors which distort market value." Iowa Code § 441.21(1)(b)(1). Mau asserts the county acknowledged considering the premium price, rendering the purchase an "abnormal transaction." Accordingly, Mau maintains, the assessment overestimated the market value of those parcels.

Indeed, Ehler testified the assessors *did* consider the premium purchase price of parcels 005 and 007. But, he explained, the value assigned to those parcels was more than $100,000 below what Mau paid. Even factoring in the restaurant improvements, their appraisal of the parcel would not reach the premium purchase price. Ehler clarified, "[W]e agree with [Mau] that they paid a premium for the property and we did not recognize that premium."

Substantial evidence supports PAAB's reliance on Ehler's treatment of the abnormal transaction involving parcels 005 and 007. Appraisers can consider such purchases if they recognize the higher price does not reflect market value and adjust the ultimate valuation to eliminate any distortion. The county adjusted its valuation according to its knowledge of the inflated purchase price. We agree with the district court's reliance on PAAB's conclusion that the county did not improperly consider the abnormal transaction.

### C.  Mau's Appraisals for Separate Parcels

The next issue centers on PAAB's rejection of Mau's appraisals based on the failure to separate out and value the individual parcels within the appraisals. Mau contests that rejection, contending adjoining parcels may be assessed as a

unit.[7]  This image, when viewed in color, is the clearest depiction in the record of

Mau's division of the parcels in its appraisals:



As noted above, Mau's first appraisal considered parcel 007, including the

restaurant, and a portion of parcel 001, including parking space.  The second

appraisal considered parcels 005, 006, and another portion of parcel 001.  Mau

---

[7] In its appeal from the review board, Mau asserted the individual parcels had the following values:

| Parcel Number | |
|---|---|
| 001 | 101,500 |
| 005 | 368,400 |
| 006 | 535,600 |
| 007 | 694,500 |
| **Total:** | 1,700,000 |

It is unclear how Mau arrived at the value of parcel 001, given its own appraisals divided that parcel for valuation purposes.

argues this is a logical way to divide the properties to maximize their market values. Mau distinguishes its commercial layout from the residential layout involved in *Dinkla v. Guthrie County Board of Review*, No 05-1662, 2006 WL 2422170, at *2 (Iowa Ct. App. Aug. 23, 2006), where the court rejected the taxpayer's argument for valuation of the condominium property as a whole rather than on the worth of each apartment and garage unit.

True enough, the law permits aggregation of some individual parcels. *See Power v. Regis*, 220 N.W.2d 587, 591 (Iowa 1974) (describing "unexplained fragmentation of taxpayers' property" and approving aggregation of three parcels forming one tract within a city lot). But we find no authority for valuation based on dividing a single parcel into separate appraisals.

Addressing this issue, PAAB recognized "these parcels may best be combined for assessment purposes as they are all under common ownership and the properties seem to be used in conjunction with one another." Yet PAAB criticized Mau's appraisals for not "allocating value back to the individual parcels because they value portions of each." The evidence supports PAAB's view. And we agree with the district court that Mau's appraisals in their current form do not present evidence based on "an acceptable method for determining market value."

### D. Substantial Evidence to Support PAAB's Valuation

Arriving at the ultimate question of this appeal, Mau challenges the valuation PAAB assigns to the properties. Mau bears the burden to show the assessment is excessive and the agency's findings were not supported by substantial evidence. Iowa Code § 441.21(3)(b); *Compiano*, 771 N.W.2d at 396. Mau also must show

the correct valuation to prevail in its claim. Iowa Code § 441.37(1)(a)(1)(b). Mau meets neither requirement.

Reviewing Mau's excessiveness claim, PAAB found the county assessor's valuations were correct. Our review of the record reveals substantial evidence to support that finding. The Vanguard appraisers did extensive research in arriving at their valuations. They included sales analysis and market comparisons with more than one-hundred transactions in the Iowa Great Lakes region, accounting for the scarcity of similar commercial sales. They did a similar analysis of improvements on local land. They gave separate appraisals of the individual parcels and the improvements upon them.

Notably, the Vanguard appraisers assigned values to the land nearly identical to those provided by Mau's appraisers. The Vanguard assessors accounted for the elevated market rate of lakefront properties and the particular location of these parcels but adjusted downward for Mau's abnormal purchase price. And they adjusted the market value for the underdevelopment of the land, reaching an estimate for the actual use. Given the sound methodology, we see no error in PAAB's acceptance of the county's valuation.

By contrast, Mau's own appraisals were inadequate. Mau's second appraisal offered a valuation based on a vacant lot. The valuation was not complete without considering the fair market value of the improvements upon the land. The assessment must represent the actual value for the property. *See* Iowa Code § 441.21(1)(a), (b); Iowa Admin. Code r. 701-71.1(1). Actual value allows assessment of the property's use in addition to its worth as vacant land, as long as

the value of that use is not special only to the present owner. *Soifer v. Floyd Cty. Bd. of Review*, 759 N.W.2d 775, 786 n.6 (Iowa 2009).

As noted, both the county and Mau offered similar values for the land itself, lending credibility to the assessor's appraisal of the land. But, Mau's appraisals stop there—relying only on comparable valuations of vacant lots. Mau offered no reason to consider the boat maintenance and storage building or the restaurant as objects of special value that would not add to the market value in the sale of the property. PAAB declined to consider Mau's appraisals for reasons described above. We find substantial evidence to support PAAB's decision.

Substantial evidence supports PAAB's findings, and we agree with the district court's conclusion Mau did not carry its burden of proof to show over-assessment. Therefore, we will not disturb PAAB's findings.

**AFFIRMED.**